### In re MASTERS MATES & PILOTS PENSION PLAN AND IRAP LITIGATION.

Andrew CULLEN; George Bomareto; Paul McGuire; Harold Beck; A.J. Morales; Guy Chadbourne; Francis E. Kyser; MM & P Pension Plan; MM & P Individual Retirement Account Plan; Pete Prevas; Paul H. Nielsen; Florin Dente; James N. Haverfield; John M. Hayes; Lynn Martin, Secretary of the United States Department of Labor; Arthur Holdeman, Plaintiffs–Appellees,

v.

Franklin K. RILEY, Defendant–Appellant,

Robert J. Lowen; Lloyd M. Martin; Paul Bardyn; Michael DiPrisco; Richard Evans; James R. Hammer; Martin F. Hickey; Edward Morgan; Robert Murphy; Anthony Naccarato; Robert W. Parker; Michael Swayne; Allen Taylor; William I. Ristine; Edmund Davis; James Hayes; Allen C. Scott; Francis E. Keyser; Henri L. Nereaux; David

York; John Sokolowski; David A. Boyle; David C. Haa; Charles Landry; Ernest Swanson; Marine Midland Bank, N.A.; Robert Parker; Allen C. Taylor; Proskauer, Rose, Goetz & Mendelsohn; Carmina J. Bracco, Defendants–Appellees,

Tower Asset Management Inc., Tower Capital Corporation; Tower Securities, Inc.; Andrew A. Levy; W. Randolph Wheeler; Walter Levering, Defendants,

Bert Epstein, Seham, Klein & Zelman, Esqs.; Martin Seham; IOMM & P, Appellees,

Federal Insurance Company, Appellant.

Nos. 947, 948, Dockets 91–6276, 91–6288.

United States Court of Appeals, Second Circuit.

Argued Dec. 18, 1991.

Decided Feb. 21, 1992.

As Amended March 18, 1992.

Kirke M. Hasson, San Francisco, Cal. (C. Douglas Floyd, Pillsbury, Madison & Sutro, of counsel), for appellant Franklin K. Riley, Jr.

Barry R. Ostrager, New York City (Kevin P. Mulry, Judah A. Shechter, Meridith Randall, Simpson Thacher & Bartlett, of counsel), for appellant Federal Ins. Co.

David S. Preminger, Rosen, Szegda, Preminger & Bloom, New York City (Jeffrey Lewis, Sigman & Lewis, Oakland, Cal., Alan M. Sandals, Berger & Montague, Philadelphia, Pa., of counsel), for appellees Andrew Cullen, et al.

Nathaniel I. Spiller, Sr. Appellate Atty., U.S. Dept. of Labor, Washington, D.C. (Marshall J. Breger, Sol. of Labor, Allen H. Feldman, Associate Solicitor for Special Appellate and Supreme Court Litigation, Marc I. Machiz, Associate Sol. for Plan Benefits Sec., Karen Handorf, Counsel for Decentralized and Special Litigation, Jeff Sacher, Counsel for General Litigation, U.S. Dept. of Labor, Washington, D.C., of counsel), for appellee Secretary of Labor.

Before TIMBERS, MESKILL and KEARSE, Circuit Judges.

MESKILL, Circuit Judge:

This appeal follows an approval of a class action settlement in the United States District Court for the Southern District of New York, Broderick, *J.* The settlement, which came after years of complex and protracted litigation, provides over $20 million to injured plaintiffs but bars third parties from asserting against the settling defendants any claims that arise out of the subject matter of this litigation.

Appellants Franklin K. Riley, Jr. and Federal Insurance Company (Federal), Riley's excess liability insurer, object to the settlement on the grounds that it unfairly cuts off Riley's rights and potentially subjects him to a disproportionate share of liability for the injuries caused the plaintiffs. Federal further asserts that the settlement unfairly will make it immediately liable for a judgment against Riley and the sole insurer responsible for defending Riley.

The settlement we review requires us to weigh the policy favoring settlement of claims by injured plaintiffs against the need to protect the rights of nonsettling defendants. We conclude that this settlement is unbalanced, in part because it reflects a misunderstanding of recent case law and in part because the district court gave inadequate consideration to relative culpability before approving the settlement bar. Accordingly, we reverse.

## BACKGROUND

The backdrop to this litigation previously has been set forth fully. *See Lowen v. Tower Asset Management*, 829 F.2d 1209 (2d Cir.1987). We will describe only those

1. Tower Asset Management Inc., Tower Capital Corporation and Tower Securities Inc. were investment firms controlled by Samuel Kovnat, Andrew A. Levy and W. Randolph Wheeler. This opinion will collectively refer to the corporations and their three shareholders as Tower.

2. A number of these actions are consolidated before the district court. *See Lynn Martin, Secretary of Labor v. Tower Asset Mgt. et al.,* No. 87

facts necessary to provide an understanding of the issues before us.

### A. *The Litigation*

During the 1980s, Tower[1] performed investment services for the Masters Mates and Pilots' Individual Retirement Income Plan (IRAP) and Pension Plan (collectively "plans"). Beginning in 1983, Tower violated the prohibited transaction provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 (ERISA) by mismanaging ERISA protected investments. *See Lowen,* 829 F.2d at 1211–12. To be precise, Tower caused the investment of approximately $30 million of the plans' assets in risky ventures. *Id.* at 1212. Many of these investments were in companies having more debt than capital. Some of these companies are now defunct. *Id.* Moreover, Tower both (1) owned substantial equity interests in some of those companies, and (2) received commissions, fees and securities from many of those companies for its investment services. *Id.* Tower's actions were improper and caused extensive losses to the plans. *Id.* at 1212–13, 1221. Plaintiffs estimate that damages exceed $50 million.

The Secretary of Labor (Secretary) and the plan participants and beneficiaries (private plaintiffs) have engaged in extensive litigation under ERISA's civil enforcement provisions to recover losses from Tower, trustees, counsel and auditors of the plans. Under ERISA, breaching fiduciaries are jointly and severally liable. *See* 29 U.S.C. § 1105(a)(2) (A fiduciary "shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan ... if, by his failure to comply with section 1104(a)(1) ... he has enabled such other fiduciary to commit a breach."). The settlement before us would affect a number of actions that are pending.[2]

CIV 1492 (Secretary's action against Trustees and Tower defendants); *Andrew Cullen et al. v. Robert Lowen, et al.,* No. 87 CIV 1798 and *George Bomareto, et al. v. Robert Lowen, et al.,* No. 86 CIV 6315 (private plaintiffs' consolidated class actions against the trustees and Tower); *James Haverfield, et al. v. Proskauer Rose Goetz & Mendelsohn, et al.,* No. 89 CIV 5168 (private plaintiffs' class action against former counsel to

Riley is one of many defendants against whom the private plaintiffs and the Secretary have actions pending. Although Riley did not become a trustee until 1984, he did have other affiliations with the plans prior to that time. Riley has vigorously disputed his ERISA liability and has argued that, even if liable, his share of the blame pales in comparison to that of other defendants.

## B. *Insurance Coverage*

Many of the defendants in these actions have insurance coverage. For the purposes of this settlement agreement, three insurance companies' policies are significant.

Aetna Casualty and Surety Company (Aetna) insured the plans and their trustees for the period from 1981 through 1984, with an aggregate liability cap of $7 million. This policy requires Aetna to pay defense costs until such time as judgment or settlement exhausts the policy limits.

Republic Insurance Company (Republic) issued separate policies covering fiduciary liability for the plans, each policy having been effective for 1985. Republic's potential coverage totals $10 million. Like the Aetna policy, defense obligations are additional and cease only on exhaustion of the policy limits by judgment or settlement.

A third insurer, Federal, issued a fiduciary liability policy to Riley's employer, American President Companies, Ltd. which covers Riley's activities as a fiduciary in outside associations. The policy also provides, however, that "such coverage shall be specifically excess of any other indemnity or insurance available to such Insured Person by reason of serving on such plans."

## C. *The Settlement*

After overseeing this litigation for the better part of a decade, the district court approved a settlement among the Secretary, the private plaintiffs and most of the defendants. Neither Riley nor Tower agreed to the settlement. In addition to the trustee defendants, the settling parties included the law firm defendants, the accounting firm defendants and the custodial trustee defendant. The agreed payments are as follows:

| | |
|---|---|
| Aetna | $7,500,000 |
| Republic | $5,250,000 |
| Counsel | $5,625,000 |
| Custodial Trustee | $1,950,000 |
| Auditors | $1,575,000 |

In return for these payments, which total $21.9 million, the settling defendants receive complete protection from further liability.

In addition to a general release, the settlement contains a bar order. This provision conditions the settlement on procurement of a final judicial order "dismissing with prejudice and equitably barring all claims that are or could be asserted, now or in the future, against any Settling Defendant by any nonsettling defendant ... arising out of" the subject matter of the Tower litigation. Thus, the settlement, if approved by us, would bar Riley from pursuing certain claims against the settling defendants.

The settlement purports to protect Riley, however. For fiduciary breaches committed by Riley in 1983 or 1984, the settlement provides for reduction of any judgment obtained against Riley "by an amount equal to the amount paid over by [Aetna] on behalf of the Trustee Defendants"—namely, $7.5 million.

The settlement potentially would also compensate Riley for the amount paid toward the settlement by Republic. To be exact, the settlement provides that the Secretary and private plaintiffs shall seek dismissal of "all claims brought by them against Riley for all damages *uniquely* attributable to breaches of fiduciary duty

---

the plans); *Robert J. Lowen, et al. v. Marine Midland Bank, N.A.*, No. 86 CIV 9719 (trustees' actions against the custodial trustee). Other actions against former accountants to the plans have not been consolidated. *See Albert Groh, et*

*al. v. Mann Judd Landau, et al.*, No. 90 CIV 0645; *Paul Bardyn, et al. v. Waldbaum, Rockower & Co., et al.*, No. 90 CIV 0635, *David Boyle, et al. v. Mann Judd Landau, et al.*, No. 90 CIV 1449.

alleged to have been committed by him in 1985." (emphasis added). The parties disagree whether Riley's coverage under the Republic policy extends beyond such claims.

Moreover, the settlement contains a specific judgment reduction provision in order to credit Riley for amounts contributed to the settlement by counsel, auditors and the custodial trustee. This proviso stipulates that the plaintiffs will reduce any judgment obtained against a nonsettling defendant by the *lesser* of (1) "the amount (exclusive of interest) of the payments made by or on behalf of such Settling Defendant(s) pursuant to this Agreement," or (2) "the amount which is the proportional share of the damages attributable to such Settling Defendant(s), or any of them, as may be determined by the Court or trier of fact at trial."

This provision conditions such judgment reduction on "a judicial determination that any Settling Defendant would, in the absence of the Bar Order, be liable to that nonsettling defendant ... by way of claims for contribution or indemnity." As a result, if a nonsettling defendant seeks credit for monies paid by the settling parties, the district court will have to determine the proportional fault of each settling party.

### D. *The Hearing*

On October 28, 1991, the district court held a day-long hearing to determine whether the settlement was fair, reasonable and adequate. Representatives of the settling parties explained how the settlement worked, why it was favorable to the plaintiffs and why it did not inequitably burden Riley.

Counsel for Riley and Federal participated in this hearing and objected strenuously to the settlement. Insisting that Riley had valid claims for indemnity, contribution and malpractice, counsel urged the district court to put fairness to Riley on an even footing with other legitimate concerns.

The district court did not consider relative fault as being a primary concern, and an evidentiary hearing did not precede approval of the settlement. Instead, the dis-

trict court's focus was on maximizing the return to the injured plaintiffs in this case.

At the conclusion of the hearing, the district court approved the settlement. The district judge stated that he found it to be "fair, reasonable and adequate to all members of the Class." In its Order and Final Judgment, the district court, *inter alia,* specifically adopted the bar order and judgment reduction provisions as set forth in the settlement agreement. These actions provoked this appeal.

The district court entered its Order and Final Judgment pursuant to Fed.R.Civ.P. 54(b). We have jurisdiction pursuant to 28 U.S.C. § 1291.

## DISCUSSION

### A. *Settlements and the Standard of Review*

Typically, settlement rests solely in the discretion of the parties, and the judicial system plays no role. *See* Mengler, *Consent Decree Paradigms: Models Without Meaning,* 29 B.C.L.Rev. 291, 291–92 (1988) (Mengler); *see also* Fed.R.Civ.P. 41(a)(1) (dismissals by plaintiffs by stipulation of parties). Certain settlements require judicial approval, however, *see, e.g.,* Fed.R.Civ.P. 23(e) (class actions); Fed. R.Civ.P. 23.1 (shareholder derivative suits), and on other occasions parties are unwilling to drop litigation unless a court invokes its equitable powers to enforce their agreement. *See, e.g.,* Mengler at 291–92 & n. 1 ("Sometimes parties to a suit for damages, rather than dismissing and settling privately, will file their settlement with the court.") (citation omitted). A consent decree is no more than a settlement that contains an injunction. Laycock, *Consent Decrees Without Consent: The Rights of Nonconsenting Third Parties,* 1987 U.Chi.Legal F. 103, 103 (Laycock); Mengler at 292.

In a class action settlement, the normal focus is on the fairness, reasonableness and adequacy of the settlement to the plaintiff class. *See* Mengler at 291; *see generally* Manual for Complex Litigation

§ 1.46, at 52–66 (5th ed. 1981) (discussing precautions that should be taken to protect plaintiffs before approval of a class action settlement).[3] Where the rights of third parties are affected, however, their interests too must be considered. *See Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983) ("In making the reasonableness determination the court is under the mandatory duty to consider the fairness of the decree to those affected."); *see also Donovan v. Robbins,* 752 F.2d 1170, 1176 (7th Cir.1985) ("Even if no third party complains, the judge has to consider whether the decree he is being asked to sign is lawful and reasonable as every judicial act must be.") (citation omitted); *cf.* Laycock at 121 (proposing that courts join persons whom a consent decree significantly affects but who are not present); Mengler at 337–42 (same). In other words, where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval.

Moreover, if third parties complain to a judge that a "decree will be inequitable because it will harm them unjustly, he cannot just brush their complaints aside." *Donovan,* 752 F.2d at 1176 (citations omitted). In fact, section 1.46 of the Manual for Complex Litigation specifically suggests that courts reviewing class action settlements consider "the views of the nonparticipating parties and counsel." Manual for Complex Litigation (Second) § 1.46, at 53.

■ A court can endorse a settlement only if "the compromise is fair, reasonable and adequate." *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983). Courts make this examination on a case-by-case basis. Whether to approve a settlement normally rests in the discretion of a district judge. *See Newman v. Stein,* 464 F.2d 689, 692–93 (2d Cir.), *cert. denied,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972). However, as Judge Friendly wrote, there are times when "a higher degree of judicial scrutiny is required." *Weinberger,* 698 F.2d at 73. Because our decision on the validity of the settlement before us rests on the determination of novel issues of ERISA law, we review the district court's decision *de novo. Cf. State of New York v. Lyng,* 829 F.2d 346, 349 (2d Cir. 1987) ("Because ... we have a complete factual record before us, and the question presented relates solely to a question of law, we undertake plenary review of the merits" of this preliminary injunction motion.).

## B. *ERISA and Proportional Fault*

### 1. *Choice of Law*

■ "ERISA's purpose is to secure guaranteed pension payments to participants by insuring the honest administration of financially sound plans." *Pompano v. Michael Schiavone & Sons,* 680 F.2d 911, 914 (2d Cir.) (citation omitted), *cert. denied,* 459 U.S. 1039, 103 S.Ct. 454, 74 L.Ed.2d 607 (1982). The touchstone of the statutory scheme is the reservation to federal authority of the sole power to regulate the field of employee benefit plans. To effect this purpose, section 514(a) expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a); *see generally Ingersoll–Rand Co. v. McClendon,* —— U.S. ——, 111 S.Ct. 478, 482–83, 112 L.Ed.2d 474 (1990) (discussing the expansive nature of ERISA preemption).

---

**3.** The Manual for Complex Litigation suggests a two-step approach for evaluating class action settlements. First, the court should determine whether notice should be sent to the class and whether an evidentiary hearing should be scheduled. A preliminary hearing is recommended to consider such factors as (1) the stage of the proceedings, (2) information indicating whether the settlement is reasonable, (3) by whom the settlement was negotiated, (4) objec-tions to the settlement, and (5) fees sought by plaintiffs' counsel and the source of those fees. If satisfied that the settlement is fair to the plaintiff class, the court then sends notice to the class. If class members object, then the court holds another hearing. Manual for Complex Litigation § 1.46 (5th ed. 1981); *see generally* R. Marcus & E. Sherman, *Complex Litigation* 476–98 (1985) (discussing section 1.46 and compiling cases on class action settlements).

The scope of ERISA law, however, is not delineated by its statutory confines. "The Supreme Court has left no doubt that 'courts are to develop a "federal common law of rights and obligations under ERISA-regulated plans."'" *Chemung Canal Trust Co. v. Sovran Bank/Maryland,* 939 F.2d 12, 16 (2d Cir.) (citations omitted), *petition for cert. filed* Oct. 22, 1991. Drawing on the principles of the law of trusts, we have held that a system of proportional fault is to be developed as part of the federal common law of ERISA and have specifically incorporated rights to indemnity and contribution into that body of law. *Chemung,* 939 F.2d at 16, 18 ("[W]e think that even a breaching fiduciary should be entitled to the protection of contribution.... Full responsibility should not depend on the fortuity of which fiduciary a plaintiff elects to sue.").

Riley argues that New York law controls the effect of a settlement on the rights to indemnity and contribution. As support, he directs us to *Getty Petroleum Corp. v. Island Transp. Corp.,* 862 F.2d 10 (2d Cir. 1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989). In *Getty,* a Lanham Act case, we stated that the New York setoff law applies "to actions brought under federal statutes in New York." *Id.* at 15 (citation omitted). *Getty,* however, is inapplicable where federal law is preemptive, and we in fact do not apply *Getty* in the securities context. *See Louis P. Singer v. Olympia Brewing Co.,* 878 F.2d 596, 599–600 (2d Cir.1989) (federal common law governs setoffs in securities cases), *cert. denied,* 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 748 (1990).

Applying state statutes that govern judgment reduction would lead to forum shopping. The content of state statutes and the judicial interpretations of those laws could determine where suits are brought. *Cf. Singer,* 878 F.2d at 600 (adoption of state statutes governing credit for settlement in securities cases would lead to disparate results). This is far from desirable. *Cf.* E. Scoles & P. Hay, *Conflicts of Law* 123

(1982) (the price of applying state law is interstate forum shopping).

Although Congress did not intend ERISA to preempt all "run-of-the-mill state-law claims," *Mackey v. Lanier Collection Agency & Service,* 486 U.S. 825, 833, 108 S.Ct. 2182, 2187, 100 L.Ed.2d 2182 (1988), it clearly intended federal law to govern pension plan regulation. *See Alessi v. Raybestos–Manhattan,* 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981) (ERISA's express preemption provisions make "pension plan regulation ... exclusively a federal concern.") (footnote omitted); *Shaw v. Delta Air Lines,* 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983) (ERISA preempts state laws that "relate to" the subject matters that it covers.). Clearly, judgment reduction affects substantive ERISA rights and is part of pension plan regulation. *Cf. Singer,* 878 F.2d at 599 ("[W]hether to credit a defendant with a setoff affects substantive rather than procedural rights of the parties under the federal securities laws."). We believe that Congress intended us to fill the interstices of ERISA's statutory scheme and that a necessary corollary of our decision in *Chemung* that indemnity and contribution exist under ERISA is that federal common law governs what is permissible in a settlement of ERISA claims. Therefore, federal common law governs our decision today.

### 2. *Joint and Several Liability, the Common Law Bar Against Contribution, and Indemnity*

■ Under the doctrine of joint and several liability, when two or more persons' torts together cause an injury, each tortfeasor is liable to the victim for the total damages. *See Zapico v. Bucyrus–Erie Co.,* 579 F.2d 714, 718 (2d Cir.1978). Common law did not permit mitigation of this rule's blunt effect through contribution, and courts refused to entertain suits by joint tortfeasors who sought partial reimbursement from others who shared blame for their victims' injuries. W. Keeton, *Prosser & Keeton on Torts* § 50, at 336–37 (5th L.Ed.1984) (Prosser & Keeton). The rationale was that a joint tortfeasor had no

one but himself to blame and that courts should not be burdened by having to assess the relative fault of wrongdoers. *See Zapico,* 579 F.2d at 718.

Although the common law did not allow all joint tortfeasors to distribute the burden of judgments against them, it provided a right of indemnity—the shifting of an entire loss to one who more justly deserved it. *See id.* It is important to distinguish this form of indemnity—based on differences in relative fault—from contractual indemnity or indemnity in favor of those who are "held responsible solely by imputation of law because of relation to the actual wrongdoer as when an employer is held vicariously liable or . . . an innocent partner is held liable." Prosser & Keeton § 51, at 341–42.

In a system that provides joint and several liability and bars any form of contribution, indemnity based on differences in relative fault is necessary to ensure fairness. Otherwise, a minimally culpable defendant might have to bear the burden of an entire judgment even though another, more favored tortfeasor was solvent.

Today, some jurisdictions do not allow indemnity based on differences in relative fault. *See Overseas National Airways v. United States,* 766 F.2d 97, 102 (2d Cir. 1985) (discussing New York law). We do not consider elimination of this remedy unreasonable when an alternative mechanism exists to distribute damages among solvent joint tortfeasors. We now turn to other means that courts employ to ensure fair distribution of damages.

### 3. *Proportionate Liability and the End of the Bar Against Contribution*

"It is now widely recognized that fundamental fairness demands a sharing of the liability." *Glus v. G.C. Murphy Co.,* 629 F.2d 248, 252 (3d Cir.1980), *rev'd on other grounds,* 451 U.S. 935, 101 S.Ct. 2013, 68 L.Ed.2d 321 (1981). One way of ensuring that a joint tortfeasor will not be alone among solvent joint tortfeasors in shouldering the burden of a judgment is to allow him to sue joint tortfeasors for contribu-

tion. Seeing merit in this approach, states and commentators have almost universally rejected a *per se* bar against contribution. *See Donovan,* 752 F.2d at 1178 ("[T]he common law's rejection of contribution among joint tortfeasors has itself been rejected by most states and most commentators.").

If a nonsettling defendant against whom a judgment had been entered were allowed to seek payment from a defendant who had settled, then settlement would not bring the latter much peace of mind. He would remain potentially liable to a nonsettling defendant for an amount by which a judgment against a nonsettling defendant exceeded a nonsettling defendant's proportionate fault. This potential liability would surely diminish the incentive to settle.

Recognizing that the right to contribution deters settlements but still seeking to mitigate the harshness of joint and several liability, some jurisdictions allow for judgment reduction as an alternative to contribution after a court has approved a settlement bar. There are three basic methods for determining how much a judgment against a nonsettling defendant should be reduced in light of a settlement by the remaining defendants. These are the *pro rata,* the proportionate fault and the *pro tanto* methods. *See, e.g., In re Jiffy Lube Sec. Litigation,* 927 F.2d 155, 160 & n. 3 (4th Cir.1991).

■ The *pro rata* rule apportions an equal share of the liability to each defendant in a lawsuit. Relative culpability is irrelevant under this approach. When, for example, a plaintiff settles with one defendant in a two defendant case, a judgment against the nonsettling defendant is reduced by one-half, regardless of whether the settling defendant was primarily or only minimally culpable. *See id.;* Harris, *Washington's Unique Approach to Partial Tort Settlements: The Modified Pro Tanto Credit and the Reasonableness Hearing Requirement,* 20 Gonzaga L.Rev. 69, 77–78 (1985). This method can deter plaintiffs from settling with fewer than all the parties. *See Miller v. Apartments*

*and Homes of New Jersey,* 646 F.2d 101, 109 (3d Cir.1981).

■ Under the proportionate fault method (proportionate method), the "jury assesses the relative culpability of both settling and non-settling defendants, and the non-settling defendant pays a commensurate percentage of the judgment." *In re Jiffy Lube Sec. Litigation,* 927 F.2d at 160 n. 3. Because the credit determination is made after a determination of liability, the proportionate method is always consistent with fault. The problem with the proportionate method is that a holdout defendant can make settlement difficult for the plaintiffs, who bear the risk of a bad settlement. *See id.* at 160–61 & n. 3. The proportionate method also makes it difficult for a district court to frame notice to a plaintiff class. Because the amount of setoff is not determined until after trial, it is difficult adequately to convey to a class the worthiness of a proposed settlement. *See id.* at 161. Moreover, determining the relative fault of each party imposes a considerable burden on a factfinder and "obviate[s] much of the advantage of partial settlement to the judicial system." *In re Atlantic Fin. Mgt. Sec. Litigation,* 718 F.Supp. 1012, 1018 (D.Mass.1988).

■ The *pro tanto* rule, by contrast, reduces a nonsettling defendant's liability for a judgment against him in the amount paid by a settling defendant. The *pro tanto* method has obvious disadvantages. Like the *pro rata* method, it can result in judgment reduction that is inconsistent with proportionate fault. Moreover, the *pro tanto* method leaves "the field of settlement very much open to collusive arrangement between a plaintiff and a favored joint tortfeasor." *Gomes v. Brodhurst,* 394 F.2d 465, 468 (3d Cir.1967). Some jurisdictions have recognized this problem and applied a *pro tanto* approach that requires a showing of good faith and a hearing on culpability before approval of a settlement bar. *See, e.g., In re Jiffy Lube Sec. Litigation,* 927 F.2d at 160 n. 3 ("a hearing focussing on fairness of the settlement to the non-settling defendant is required for approval"). This approach is more likely to

be consistent with equitable principles suggesting that damages should be apportioned in accordance with fault. *See In re Nucorp Energy Sec. Litigation,* 661 F.Supp. 1403, 1408 (S.D.Cal.1987).

### 4. The Effect of a Settlement on ERISA Created Rights

In *Chemung,* we stated that Congress intended courts to fashion a federal common law of ERISA and held that rights to indemnity and contribution are integral aspects of that law. *Chemung,* 939 F.2d at 16. Our decision incorporated traditional equitable principles of trust law that favor apportioning liability in accordance with fault. *Chemung* reflects our belief that ERISA's purpose of deterring pension plan abuse is frustrated when solvent breaching fiduciaries are allowed to escape the consequences of their actions. Because the case did not require us to do so, however, we did not set forth the scope of indemnity and contribution under ERISA or define a defendant's ability to obtain them in light of a settlement. We now turn to those questions.

### a. Settlement Credit and Contribution

■ Under the settlement before us, certain claims against Riley would be dismissed, he would receive settlement credit for Aetna's payment and, if he could prove entitlement to contribution, he would secure a judgment reduction for the lesser of the amount that a settling defendant paid in satisfaction of claims or the amount representing that settling defendant's proportionate fault.

Riley asserts that these terms do not conform to the law of this Circuit. He argues that the district court should have considered relative fault before extinguishing his rights and that he is entitled to receive a judgment reduction at least in the amount paid by the settling parties.

The private plaintiffs and the Secretary insist that this Circuit has already adopted a judgment reduction rule and that this settlement was tailored to it. The private plaintiffs argue that the law in our Circuit disallows a nonsettling party from receiv-

ing a judgment reduction unless he proves that he would be entitled to contribution for that amount against the settling defendant. Thus, to the extent that an amount tendered by a settling defendant exceeds the proportionate fault of that settling defendant, the nonsettling defendant would not receive credit for it.

In our case, the auditors settled for $1,575,000. Under a hypothetical supplied by the settling plaintiffs, if the factfinder determines that the auditors' proportionate share of a judgment is $575,000, then Riley would not receive credit for the other $1 million paid by the auditors. This excess amount would not represent an amount paid to compensate the plaintiffs for the auditors' relative share of fault and thus, they argue, Riley should not receive credit for it.

As support, the private plaintiffs direct us to our decisions in *Singer* and *In re Ivan F. Boesky Sec. Litigation*, 948 F.2d 1358 (2d Cir.1991). Before addressing what we said in *Singer* and *Boesky*, we note that those cases involved securities law and not ERISA. Nevertheless, we may look to them for guidance.

In *Singer*, the plaintiff, Singer, sued Olympia Brewing Company (Olympia) and Loeb Rhoades & Co. (Loeb Rhoades) in separate actions for violations of the securities laws. *Singer*, 878 F.2d at 597–98. Prior to trial, Singer settled with Loeb Rhoades for $1,250,000. After a trial yielded Singer a $2,958,350.50 judgment against Olympia, the district court reduced the judgment against Olympia in the amount of $1,250,000. *Id.* at 597.

Singer argued that the setoff was improper. He stressed that Loeb Rhoades had settled not only securities claims but also a RICO claim that could have resulted in treble damages. Accordingly, he posited that "the settlement [should] be deducted, not from the amount to be recovered under the judgment but from the highest amount of 'provable damages' that could have been recovered against the settling defendant." *Id.* at 600. We rejected this argument because the settlement must be deducted "from the claim or judgment in the litigat-

ed case" instead of from a speculative amount that a plaintiff had sought. *Id.* at 600–01. Underscoring our decision was that Singer had not claimed to have suffered more than one injury even though Loeb Rhoades and Olympia separately had violated the securities laws. *Id.*

We upheld the setoff, adopting the one satisfaction rule. This rule provides that "when a plaintiff receives a settlement from one defendant, a nonsettling defendant is entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant as long as both the settlement and judgment represent common damages." *Id.* at 600.

*Singer* makes two main points. First, judgment reduction in accordance with the one satisfaction rule is based on the judgment in the litigated case, and a court will not help a plaintiff achieve a total recovery that exceeds that amount. *Id.* at 600–01. Second, where a settlement and a judgment compensate a plaintiff for the same injury, a nonsettling defendant is entitled to a judgment reduction at least in the amount of a prior settlement. *Id.* at 600.

Conspicuous by its absence is what *Singer* did not say. It did not address whether Olympia could sue Loeb Rhoades for contribution in excess of the judgment reduction. That issue was not before us. *Cf. USF & G v. Patriot's Point Dev. Authority*, 772 F.Supp. 1565, 1571 (D.S.C.1991) ("No bar order was discussed in *Singer*, and the decision did not address the policy question of what credit method would be required to compensate the nonsettling defendant for the barring of his equitable right to contribution.").

Moreover, we did not say that a judgment against a nonsettling defendant should not be reduced by a settling defendant's individual payment where that payment exceeds an ultimate percentage finding on that settling defendant's liability. If this were true, then a plaintiff could maximize his total recovery by proving that a party who made the largest contribution to a settlement was the party least at fault.

The settlement before us would grant Riley (1) the dismissal of some claims against him, and (2) credit for Aetna's payment and the lesser of (a) an amount representing a settling defendant's relative fault, or (b) a settling defendant's actual contribution to the settlement. If a settling defendant is found blameworthy in an amount less than his settlement payment, then under the terms of this agreement Riley would not receive credit for an amount paid by that defendant in *excess* of relative fault. Inclusion of this settlement provision ignores the one satisfaction rule adopted in *Singer*.

A determination that a settling defendant paid an amount in excess of his fault should not affect a nonsettling defendant's right to judgment reduction. Absent a showing that damages are not common, a nonsettling defendant whose rights against settling defendants are to be barred is entitled to judgment reduction at least in the amount paid by all settling parties.

Moreover, the settlement we are reviewing provides that the private plaintiffs and the Secretary will not pursue any claims against Riley that are "uniquely attributable" to 1985. They assert that this provides Riley with credit for the $5.25 million that Republic paid to satisfy its liability.

As Riley points out, however, this leaves open the possibility that the private plaintiffs and the Secretary will argue that no claims are "uniquely attributable" to 1985. Thus, they could pursue all of their claims against Riley, who in fact might then receive no credit for Republic's payment. This also might result in a violation of *Singer*'s one satisfaction rule.

The private plaintiffs and the Secretary also argue that *Boesky* supports their argument. We disagree.

In *Boesky*, we did not adopt a method of judgment reduction. Although we recognized that settlement bars are often desirable because they facilitate settlement, no specific judgment reduction provision was before us. *Boesky*, 948 F.2d at 1362, 1364. In fact, we allowed the parties to defer adoption of a specific judgment reduction method, in part because "neither the set-

tling nor the nonsettling defendants object[ed] to these matters being deferred." *Id.* at 1369. In no way did we intimate that we later would approve a method of judgment reduction that did not conform to *Singer*. With that said, we now turn to a determination of the matter at hand.

 We hold that contribution does not exist after a court approves a fair settlement bar. Otherwise, settlements among fewer than all the parties would be difficult to reach. However, third party participation in an evidentiary fairness hearing and court approval of the settlement bar are necessary to protect the due process rights of third parties. *See United States v. International Brotherhood of Teamsters*, 948 F.2d 98, 103 n. 2 (2d Cir. 1991) ("[A] consent decree may not impose ... obligations [on a nonparty] without affording the affected nonparty a meaningful opportunity to challenge the application of the decree to it.").

 A settlement bar should not be approved unless it is narrowly tailored and preceded by a judicial determination that the settlement has been entered into in good faith and that no one has been set apart for unfair treatment. Moreover, a court should not approve a settlement bar that grants a nonsettling defendant a judgment reduction less than the amount paid by settling defendants toward damages for which the nonsettling defendant would be jointly and severally liable.

 Relative fault is not the only factor that district courts should take into account when appraising the fairness of a settlement. The likelihood of the plaintiff's prevailing at trial and the adequacy of the resources of the most culpable party, for example, may also be taken into account. *See* Manual for Complex Litigation (Second) § 30.46, at 244–45 ("[A] partial settlement providing little relief may be entirely satisfactory if the settling defendant has strong defenses or is impecunious."); *In re Nucorp Energy Sec. Litigation*, 661 F.Supp. at 1408 (The settlement should be considered "in light of any uncertainties surrounding the settling defendant's liabili-

ty.") (citation omitted). Consideration of all these factors, including relative fault, in determining what is a fair settlement "guarantee[s] that a settling defendant escapes neither the responsibility for his wrongdoing nor, therefore, the deterrent effect which underlies the right to contribution." *Id.* at 1408–09.

■ A district court should conduct an evidentiary hearing when one is sought. However, we decline to delineate either the requirements or all of the appropriate considerations for that hearing. The test must be one of fairness.[4]

The settlement at issue here does not adequately satisfy the requirements of our holding today, and thus the settlement bar cannot stand. The settlement provides for a judgment reduction that may be less than the amount paid by the settling defendants. The district court did not consider relative fault, nor did the district court make a proper determination that the settlement would compensate Riley fairly for his lost right to contribution. Therefore, the district court erred in approving the settlement insofar as that settlement barred Riley's right to contribution.

### b. *Indemnity*

■ Riley insists that if a judgment were entered against him in this case, he would be entitled to indemnity. The district court, he argues, cannot extinguish this right. We disagree.

In *Chemung,* we stated that indemnity is available for ERISA defendants but did not set forth the circumstances in which it would be available. Traditional trust law has allowed joint tortfeasors to seek indemnity instead of contribution where others are "substantially more at fault." *See* Restatement (Second) of Trusts § 258; 3 A. Scott, *Scott on Trusts* § 258.1, at 2210 (3d ed. 1967); *Whitfield v. Lindemann,* 853 F.2d 1298, 1303 (5th Cir.1988), *cert. denied,*

490 U.S. 1089, 109 S.Ct. 2428, 104 L.Ed.2d 986 (1989); *Free v. Briody,* 732 F.2d 1331, 1338 (7th Cir.1984). In *Free,* the Seventh Circuit expressly incorporated into the federal common law of ERISA a right to indemnity based on differences in relative fault. *Free,* 732 F.2d at 1336–38. *But see Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985) (rejecting the statutory basis through which *Free* incorporated the right of indemnity into ERISA). It is this form of indemnity—which relates to the distribution of liability among culpable tortfeasors—that *Chemung* dealt with and on which Riley's potential indemnity claims appear to be based.

■ Where a defendant seeks indemnity based on differences in fault, we see no reason why a court-approved settlement bar should have a different effect on that right than it would have on contribution. As we have made clear, a court-approved settlement bar may eliminate the right to contribution. Accordingly, if a district court determines after an evidentiary hearing that a settlement is fair and approves a settlement bar, then a defendant whose claim is based on differences in relative fault does not retain a right to seek indemnity. Thus, if the parties again come to terms and the district court determines after an evidentiary hearing that an agreement containing a settlement bar that precludes indemnity claims based on differences in relative fault is fair, reasonable and adequate, then it may approve that settlement.

### C. *Malpractice and Other Claims*

■ In this case, the settlement bar was expansive. It would enjoin anyone other than the "United States and any officer, agency, or department of the United States" from pursuing "now or in the fu-

---

4. We recognize that by compelling evidentiary hearings we may impose an additional burden on district courts. We believe, however, that this task will prove no more burdensome than having district courts examine the merits of nonsettling defendants' individual contribution claims, as the settling parties would have the district court do in this case. Other courts also have concluded that such hearings are appropriate. *See, e.g., In re Jiffy Lube Sec. Litigation,* 927 F.2d at 160; *Patriot's Point,* 772 F.Supp. at 1565; *Dalton v. Alston & Bird,* 741 F.Supp. 157, 160 (S.D.Ill.1990).

ture, any claim that could be asserted against any Settling Defendant arising out of the hiring, retention, monitoring, performance, termination of and/or failure to terminate Tower, or relating in any other way to Tower."

The Secretary argues that this bar properly may affect malpractice claims because ERISA preempts the New York malpractice claims that Riley is likely to bring. We disagree. If ERISA preempts malpractice or any other such claims that might arise out of this suit, then the settlement bar is unnecessary. Moreover, "arising out of" is an expansive phrase, and we cannot predict all state law claims that might ensue from this litigation. *See, e.g., Mackey,* 486 U.S. at 830–41, 108 S.Ct. at 2185–91 (ERISA does not preempt all state garnishment statutes because they affect plans covered by the statute.). Moreover, although judgment reduction compensates a nonsettling defendant for his lost rights of indemnity and contribution, it does not necessarily compensate him for other lost claims. Accordingly, we conclude that this overly broad settlement bar might impermissibly affect Riley's rights and thus cannot stand.

## CONCLUSION

The district court should not have approved the settlement in this case. Relative fault is an important consideration in determining whether a settlement is fair, reasonable and adequate and may not be cast aside. A court may approve a settlement bar after a fairness hearing, but that bar must be narrowly tailored and conform to the federal common law of ERISA.

The parties have raised a number of other issues that do not affect our disposition of this appeal. We need not address them.

The judgment of the district court is reversed.

Costs to the appellant.

In *Lowen,* we stated that, "so far as practicable," all further appeals in this case would be heard by the original panel. Although the expedited nature of this appeal prevented it from going before the *Lowen* panel, all future appeals should be referred to that panel.