**Louis P. SINGER, as Successor in Interest to Troster, Singer & Co., Plaintiff–Appellee Cross–Appellant,**

v.

**OLYMPIA BREWING COMPANY, Defendant–Appellant Cross–Appellee.**

**Nos. 652, 653, Dockets 88–7692, 88–7720.**

United States Court of Appeals, Second Circuit.

Argued Jan. 24, 1989.

Decided June 28, 1989.

Edward T. Joyce, Chicago, Ill. (Joyce & Kubasiak, Chicago, Ill., Lewis S. Sandler, New York City, of counsel), for plaintiff-appellee cross-appellant.

William M. Bitting, Los Angeles, Cal. (Hill, Farrer & Burrill, Darlene B. Fischer, Dean E. Dennis, William A. White, Los Angeles, Cal., Amy D. Kanengiser, Spengler, Carlson, Gubar, Brodsky & Frischling, New York City, of counsel), for defendant-appellant cross-appellee.

Before MESKILL, PRATT, and ALTIMARI, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Defendant Olympia Brewing Company (Olympia) appeals from an order of the United States District Court for the Eastern District of New York, Joseph M. McLaughlin, *Judge,* denying Olympia's alternative motions under Fed.R.Civ.P. 50(b) and 59 for judgment n.o.v., a new trial, and a partial new trial, made on the ground that there was insufficient evidence to support the jury's verdicts in this securities fraud action. Plaintiff Singer cross-appeals from an amended judgment entered on August 2, 1988, that reduced Singer's judgment against Olympia from $2,958,-350.50 to $1,708,350.50 to reflect a setoff of $1,250,000 based on the post-verdict settlement Singer had obtained in another action from a third party, Loeb Rhoades & Co. (Loeb Rhoades).

Because there was sufficient evidence to support the jury's verdicts, we affirm the district court's denial of Olympia's motions for post-verdict relief. On the cross-appeal, we conclude that the setoff was proper and thus affirm the amended judgment.

## I. BACKGROUND

Singer, as successor-in-interest to Troster, Singer & Co. (Troster Singer), brought this securities fraud action against Olympia, alleging primary and aiding-and-abetting violations of §§ 15 and 17 of the Securities Act of 1933, 15 U.S.C. §§ 77o and 77q; §§ 10, 15, and 20 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j,

78o, and 78t; and SEC rules 10b–5 and 15c1–2, 17 C.F.R. § 240.10b–5 and § 240.15c1–2. Singer also alleged violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 et seq., but that claim was dismissed before trial.

In 1975–1977 Olympia was an independent beer manufacturer and distributor operating primarily in the northwestern part of the United States. Its stock was traded over the counter. Singer's claims arose out of a series of transactions in Olympia stock by Troster Singer, a professional market maker, in a market that had been artificially inflated by the actions of Loeb Rhoades, a registered broker-dealer.

In 1975 R. Jack Bernhardt, a registered representative and securities salesman for Loeb Rhoades, began inducing his customers to purchase Olympia stock. Through various means, including the spreading of false rumors of an imminent takeover of Olympia, he manipulated the market and caused an artificial increase in the price of Olympia's stock.

In March 1977 Troster Singer acquired a large number of shares of Olympia stock at the artificially inflated prices, but later suffered substantial losses when the fraud was revealed and the price of the stock plummeted. Singer claimed that Olympia's officers knew or should have known of Bernhardt's or Loeb Rhoades's manipulation of the market before Olympia made voluntary public disclosures in an article in *Barron's* and in two press releases, and that, in order to take advantage of the artificially high price of its stock, Olympia made material misstatements or omissions by failing to reveal the known fraud. Singer further claimed that Troster Singer had relied on Olympia's misstatements or omissions to its substantial injury.

The jury found against Olympia in special verdicts establishing, with respect to the primary § 10(b) and rule 10b–5 violation, that Olympia made either material misstatements or omissions; that it acted with intent to defraud or with reckless disregard for the truth; that Troster Singer reasonably relied on Olympia's misrepresentations or omissions; and that Olympia thereby caused Troster Singer damages in the amount of $1,354,592.50. With respect to the aiding-and-abetting violation, it was uncontested that either Bernhardt or Loeb Rhoades had violated § 10(b) and rule 10b–5, and the jury found, in its special verdicts, that Olympia had known of Bernhardt's or Loeb Rhoades's activities; that it had given either Bernhardt or Loeb Rhoades substantial assistance in effecting the violation; and that the substantial assistance had caused Troster Singer's losses of $1,354,592.50. To the jury's verdict of $1,354,592.50, the trial judge added $1,603,-758.00 in prejudgment interest for a total judgment of $2,958,350.50.

## II. DISCUSSION

### A. Motions for Judgment Notwithstanding the Verdict and New Trial

█ The post-verdict motions need not detain us long. Asserting that there was insufficient evidence to support the jury's findings that Olympia made material misstatements or omissions, acted with scienter, and caused Singer's losses, Olympia claims that the district court should have granted its post-verdict motions.

> Judgment n.o.v. is warranted only where (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [people] could not arrive at a verdict against him.

*Bauer v. Raymark Industries, Inc.,* 849 F.2d 790, 792 (2d Cir.1988) (quoting *Mallis v. Bankers Trust Co.,* 717 F.2d 683, 688–89 (2d Cir.1983)); *Newmont Mines Limited v. Hanover Insurance Co.,* 784 F.2d 127, 132 (2d Cir.1986).

Having carefully reviewed the record, we cannot conclude that the jury's special verdicts were "the result of sheer surmise and conjecture" or that "reasonable and fair minded [people] could not [have] arrive[d] at a verdict against" Olympia. To the con-

trary, the evidence amply supports the jury's determinations that Olympia made material misstatements or omissions, did so with scienter, and caused Singer's losses of $1,354,592.50. We therefore affirm the district court order denying the motion for judgment n.o.v.

Insofar as Olympia sought a new trial, our scope of review is narrowly circumscribed. We may reverse a denial of a new trial "only for a clear abuse of discretion, and when a new trial is sought on the ground that the verdict was against the weight of the evidence 'we have disclaimed the authority to review a ruling on such a motion'." *Bauer v. Raymark Industries, Inc.*, 849 F.2d at 792 (quoting *Newmont Mines Limited v. Hanover Insurance Co.*, 784 F.2d at 133). To the extent that we have anything to review, we conclude that, under the circumstances here, there was no abuse of discretion.

### B. *Setoff*

■ A more significant problem is presented by the setoff issue. In his cross appeal Singer argues that the trial court erred in setting off the $1,250,000 that Singer had received from Loeb Rhoades in settlement of Singer's separate action against Loeb Rhoades for the same injury. We disagree.

In the fall of 1980, prior to initiating this lawsuit against Olympia, Singer had commenced a separate action against Loeb Rhoades in the Eastern District of New York charging Loeb Rhoades with manipulating Olympia stock. In his complaint, Singer advanced the same claims, including a RICO violation, against Loeb Rhoades as he later alleged in the instant action, and he sought identical damages, including treble damages for violating RICO. The Loeb Rhoades action was transferred to the Northern District of Illinois since at least eighteen other actions arising out of the Olympia controversy were pending there against Loeb Rhoades. In this New York action against Olympia the RICO claim was dismissed prior to trial, but it survived a motion to dismiss in the Illinois action against Loeb Rhoades.

Two weeks after the verdicts were rendered against Olympia in New York, and on the day Loeb Rhoades was to go to trial in Illinois, Singer settled with Loeb Rhoades for $1,250,000. Olympia then sought to offset that Illinois settlement amount against the New York judgment. Judge McLaughlin granted the motion and entered an amended judgment of $1,708,350.50 against Olympia. Singer contends that the setoff was improper.

■ As a threshold matter, it has been unclear whether in a 10b–5 cause of action the federal securities laws incorporate the state law of setoff or require a uniform federal rule for setoff. *See, e.g., U.S. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1235–39, 1260–63 (10th Cir.1988) (determining whether defendant entitled to a credit for settlement without determining whether federal or state law applied); *Harris v. Union Electric Co.*, 846 F.2d 482, 485 (8th Cir.1988) (same); *Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1389 n. 4 (9th Cir.1987) ("It is unclear whether federal or state law applies to the settlement offset issue."); *Ratner v. Sioux Natural Gas Corp.*, 719 F.2d 801, 803–04 (5th Cir.1983) (noting that both state cases and federal securities cases recognize the "one satisfaction" rule, but applying state law).

We believe a uniform national rule of settlement credit is appropriate for several reasons. First, whether to credit a defendant with a setoff affects substantive rather than procedural rights of the parties under the federal securities laws. Although most circuits have, in securities actions, incorporated state statutes for procedural matters, such as statutes of limitations, *see, e.g., Wood v. Combustion Engineering, Inc.*, 643 F.2d 339, 341–42 (5th Cir.1981); *O'Hara v. Kovens*, 625 F.2d 15, 17 (4th Cir.1980), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981); *Cook v. Avien, Inc.*, 573 F.2d 685, 694 (1st Cir.1978); *Stull v. Bayard*, 561 F.2d 429, 431–32 (2d Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978); *Parrent v. Midwest Rug Mills, Inc.*, 455 F.2d 123, 125 (7th Cir.1972); *but see In re*

*Data Access Systems Securities Litigation,* 843 F.2d 1537 (3d Cir.) (*in banc*) (holding that statute of limitation for § 10(b) and rule 10b–5 actions is to be borrowed from analogous federal securities law rather than incorporated from state law), *cert. denied,* —— U.S. ——, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988), the circuits generally have not adopted state law as the rule of decision to govern substantive aspects of implied private securities actions. *See Wolf v. Frank,* 477 F.2d 467, 479 (5th Cir.) (federal law determines the availability of prejudgment interest), *cert. denied,* 414 U.S. 975, 94 S.Ct. 287, 38 L.Ed.2d 218 (1973); *Drachman v. Harvey,* 453 F.2d 722, 726–27 (2d Cir.1971) (federal law determines the definition of a "shareholder" entitled to bring suit), *rev'd on other grounds in rehearing in banc,* 453 F.2d 736 (2d Cir.1972); *Baumel v. Rosen,* 412 F.2d 571, 575 (4th Cir.1969) (proper measure of damages is determined by federal law), *cert. denied,* 396 U.S. 1037, 90 S.Ct. 688, 24 L.Ed.2d 681 (1970).

Second, adoption of state statutes governing credit for settlement would lead to disparate results in cases in which (1) the state statutes differed or (2) state interpretation of similarly worded statutes differed. Because most securities fraud actions involve multiple parties from various states and in many cases at least some of the defendants settle, the incentive to forum-shop for favorable state rules would be heightened in many cases.

We therefore hold that federal law should determine whether a defendant in a federal securities action is entitled to a credit against judgment for the settlement by another party to the dispute.

■ The next question, of course, is what should the federal rule be? We think it must be the one satisfaction rule, which provides that a plaintiff is entitled to only one satisfaction for each injury. *See U.S. Industries, Inc. v. Touche Ross & Co.,* 854 F.2d at 1236, 1261–62; *Harris v. Union Electric Co.,* 846 F.2d at 485; *Marcus, Stowell & Beye Government Securities, Inc. v. Jefferson Investment Corp.,* 797 F.2d 227, 233 (5th Cir.1986); *Ratner v.*

*Sioux Natural Gas Corp.,* 719 F.2d at 803. *See also* N.Y.Gen.Oblig.Law § 15–108 (McKinney 1989) *and* Ill.Rev.Stat. ch. 70 para. 302 § 2(c) (1987). The rule has also been approved in the Restatement (Second) of Torts § 885(3) (1979):

A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment.

Under this rule, when a plaintiff receives a settlement from one defendant, a nonsettling defendant is entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant as long as both the settlement and judgment represent common damages. *See Hess Oil Virgin Islands Corp. v. UOP, Inc.,* 861 F.2d 1197, 1208 (10th Cir.1988); *U.S. Industries, Inc.,* 854 F.2d at 1236; *see also* Restatement (Second) of Torts § 885(3), comments e & f.

Singer accepts application of the one satisfaction rule in this case and even concedes that he suffered only one injury. Nevertheless, he argues that the settlement credit was improperly applied here because Loeb Rhoades had settled not only the securities claims but also a RICO claim that exposed Loeb Rhoades to possible treble damages. Singer advances the novel argument that where a plaintiff may be entitled to more damages from one defendant than from another, the one satisfaction rule should require that the settlement be deducted, not from the amount to be recovered under the judgment but from the highest amount of "provable damages" that could have been recovered against the settling defendant. This argument borders on the frivolous.

In the first place, Singer's proposed interpretation of the rule would run counter to the requirement, found in virtually every case and statute adopting the rule, as well

as in the Restatement (Second), that the settlement amount be deducted from the claim or judgment in the litigated case, and not from the potential claim or judgment in the settled case.

Further, Singer seeks to construct his "provable damages" against Loeb Rhoades as follows: (1) Singer obtained a jury verdict on the securities claim against Olympia for $1,354,592.50 representing out-of-pocket damages; (2) if he had been successful in a trial against Loeb Rhoades, Singer might have received the same damages on the securities claim; (3) Singer might also, however, have been able to establish his RICO claim against Loeb Rhoades, and, if so, he would have recovered treble damages amounting to $4,063,777.50; (4) in addition, Singer would have been entitled to prejudgment interest of $1,603,758 on the out-of-pocket amount, thus creating total "provable damages" of $5,667,535.50. Singer would have us conclude that the settlement amount of $1,250,000 should be subtracted from this "provable damages" figure, and that since the remaining sum of $4,417,535.50 exceeds the judgment awarded against Olympia, Olympia would be entitled to no setoff at all.

We decline to journey with Singer down this road of speculation for two reasons. First, there has been no adjudication that anyone was liable to Singer on the RICO claim. *See Hines v. IBG International, Inc.,* 813 F.2d 1331, 1335 (4th Cir.1987) (plaintiff may not treble jury verdict before setting off settlement amount where settling defendants settled treble damage claim but nonsettling defendant went to trial and prevailed on that claim). Second, Singer relies on analytically dissimilar cases in which a plaintiff sues multiple defendants for treble damages, settles with one or more of them, and then prevails at trial against the remaining defendants. In such cases, we have held that it is proper to treble the damage award before crediting settlement payments. *See, e.g., State of New York v. Hendrickson Brothers, Inc.,* 840 F.2d 1065, 1086–87 (2d Cir.) (antitrust case), *cert. denied,* —— U.S. ——, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988); *Hydrolevel Corp. v. American Society of Mechanical Engineers, Inc.,* 635 F.2d 118, 130 (2d Cir.

1980) (same), *aff'd,* 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982). Here, however, Singer's RICO claim against Olympia in the New York action was dismissed prior to trial, and its parallel RICO claim against Loeb Rhoades was included in the overall settlement of the Illinois action. In such a case, we will not speculate either that a RICO violation would have been established had Singer proceeded to trial in Illinois, or that, had there been a RICO trial and recovery there, the RICO damages before trebling would have been the same as the damages awarded in the New York case. Although, as Singer claims, the settling defendant may well have considered its possible exposure to treble damages in deciding to settle, it would be entirely speculative for us, absent a finding of liability on the RICO claim, to treble in the settled Illinois case the actual damages awarded in the tried New York case.

### III. CONCLUSION

In summary, the district court properly subtracted the Illinois settlement amount from the judgment in the New York case. Both the order denying alternative motions for judgment notwithstanding the verdict, new trial, or partial new trial and the amended judgment incorporating the setoff of the amount received by Singer in settlement of his separate action for the same injury are affirmed.