**In re JIFFY LUBE SECURITIES LITIGATION.**

Civ. A. No. Y–89–1939.

United States District Court, D. Maryland.

Sept. 13, 1991.

John Isbister, Baltimore, Md., Bruce E. Gerstein, New York City, and Steven J. Toll, Washington, D.C., for plaintiffs.

Wilbur D. Preston, Jr. and Fenton L. Martin, Baltimore, Md., for defendant Ernst & Young.

Charles S. Fax, Baltimore, Md., for defendant Shearson Lehman Hutton, Inc.

John Henry Lewin, Jr., Baltimore, Md., for defendant Jiffy Lube Intern., Inc.

Joseph D. Cheavens, Houston, Tex., for Pennzoil Co.

## MEMORANDUM

JOSEPH H. YOUNG, Senior District Judge.

*In re Jiffy Lube Securities Litigation*, 927 F.2d 155 (4th Cir.1991), directed the Court to specify the method of setoff as it pertains to Ernst & Young prior to trial and not postpone a decision until the case is resolved. The three alternative methods of setoff are:

(1) *Pro tanto*, in which the judgment is reduced by the amount paid by the settling defendants; the non-settling defendant pays the remainder. This method

exposes the non-settling defendant to liability for any deficiency in the judgment and requires a hearing on fairness of the settlement to the non-settling defendant. (2) *Proportionate fault*, in which the jury assesses the relative culpability of both settling and non-settling defendants, and the non-settling defendant pays a commensurate percentage of the judgment. The plaintiffs bear the risk of a "bad" settlement and thus have incentive to obtain a settlement accurately apportioned according to fault. However, the final determination of the amount of setoff is necessarily delayed, making it difficult to frame a notice to the plaintiff class that fairly presents the merits of the proposed settlement. (3) *Pro rata*, in which the judgment amount is divided by the number of defendants, settling and non-settling, that are found liable. Relative culpability is not an issue. Since the settling defendants will already have satisfied their debt to plaintiffs, the non-settling defendant may have to pay a larger share if the judgment is greater than the settlement amount. Conversely, the non-settling defendant will pay less if the judgment is less than the settlement amount. *Id.* at 160 n. 3. The Court finds the *pro tanto* method of setoff to be the most equitable to all parties.

■ Under the *pro tanto* rule, the entire amount of damages for which the remaining defendants are liable is determined at full trial. From that damage amount, the settlement amount with the settling defendants is deducted and the non-settling defendants are required to pay the remainder. *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir.), *cert. denied*, 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 748 (1990). The advantages of this method are: (1) The trial of the non-settling defendants is shorter and less complex because the settling defendants are no longer a part of the litigation and the jury need not determine relative fault; *Dalton v. Alston & Bird*, 741 F.Supp. 157, 160 (S.D.Ill.1990); *In re Atlantic Financial Management Securities Litigation,* 718 F.Supp. 1012, 1018 (D.Mass.1988) (comparing with *proportionate* method "... in complex securities litigation, the burden on the jury's time and perception is already considerable. To add to this burden the task of apportioning fault between absent and present defendants would obviate much of the advantage of partial settlement to the judicial system itself."); (2) this approach requires the Court to make a determination that the settlement was made in good faith and was fair to the non-settling party; *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1230 (9th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990); *In re Atlantic Financial Management Securities Litigation*, 718 F.Supp. 1012, 1015 (D.Mass.1988). Factors to support a "fairness" finding include: (1) whether a larger judgment against the settling defendants would have been collectible; (2) the strength of plaintiffs' liability case against the settling defendant; (3) the settling defendant's relative culpability; and (4) the participation of a magistrate or judge in settlement negotiations. *See id.* at 1017 (a fairness hearing focuses on whether the discharge of the settling defendant for the amount specified would be fair to the settling defendants); *In re Nucorp Energy Securities Litigation*, 661 F.Supp. 1403, 1408 (S.D.Cal.1987). A third advantage is that the *pro tanto* method is consistent with the tort concept of "one satisfaction rule." *Singer*, 878 F.2d at 600. Under this rule, where a plaintiff receives a settlement from one defendant, the non-settling defendant is entitled to credit of the settlement amount against any judgment obtained against the non-settling defendant, as long as both the settlement and judgment are derived from the same loss. *Id.*[1]

---

**1.** Restatement (Second) of Torts 885(3) (1979) states:

A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment.

■ Ernst & Young's concern that *pro tanto* encourages collusion between plaintiffs and the settling defendants is unjustified. A Rule 23 hearing was held in December, 1989, and a good faith hearing will prevent any possibility of collusion. Although this may "mean[ ] bogging down the settlement process in a miniature trial before trial," equity is the goal and any inconvenience is, ultimately, negligible.

Ernst & Young also argues that the hearing would not be fair since the hearing comes before any significant discovery which would cast light on the relative culpabilities of the settling and non-settling defendants. *Atlantic Financial*, 718 F.Supp. at 1017–18 (sufficient evidence for court's determination of relative culpability); *Dalton*, 741 F.Supp. at 158. The purpose of a fairness hearing is to assess the settlement proposal as it affects the non-settling party which will clearly include an evaluation as to whether or not significant discovery has been completed. As demonstrated by plaintiffs' motion to dismiss and the motions hearing, it is clear that the parties have been involved in extensive discovery. Ernst & Young's argument is without merit.

Furthermore, the fairness hearing is intended to ensure that the plaintiffs and the non-settling defendants are treated equitably by determining whether the settlement is fair in light of the potential liability of the defendant and the likelihood of recovery. *Dalton*, 741 F.Supp. at 160. It also prevents the other defendants from paying in excess of their share of liability. *Id.*

Although the *pro rata* method was the traditional form of setoff recognized under securities laws, *Wassel v. Eglowsky*, 399 F.Supp. 1330, 1370 (D.Md.1975), *aff'd per curiam*, 542 F.2d 1235 (4th Cir.1976)[2]; Note, *Contribution Under the Federal Securities Laws*, 1975 Washington University Law Quarterly 1256, 1303 (1975); 5C Jacobs, *Litigation and Practice Under Rule 10b–5* 264.02(c) at 11–445 (1981) (9/89 Release), the trend is moving away from the *pro rata* approach. In *Smith v. Mulvaney*, 827 F.2d 558, 561 (9th Cir.1987), the Court stated,

> These critics charge it is inequitable to distribute liability equally among defendants without regard to the extent of their wrongdoing. Due to this inequity, the overwhelming trend has been against the use of the pro rata measure.
>
> \*     \*     \*     \*     \*     \*
>
> The critics also argue that the additional administrative convenience provided by application of the pro rata standard is minimal.
>
> \*     \*     \*     \*     \*     \*
>
> We find the critics' arguments compelling. The court in *McLean* [*v. Alexander*, 449 F.Supp. 1251, 1276 (D.Del 1978), *rev'd on other grounds*, 599 F.2d 1190 (3d Cir.1979)] described the pro rata standard as having "more mathematical than judicial integrity." That description appears especially appropriate in securities fraud cases which include numerous defendants with potentially vast differences in culpability.

*Id.* at 561. (other citations omitted).

■ Ernst & Young's argument that *pro rata* is the law of Maryland is also meritless. *See* Md.Ann.Code Art. 50, § 20. There are no pendent state law claims from which setoffs are to be figured.[3] *See First Federal Sav. & Loan v. Oppenheim, Ap-*

---

2. Ernst & Young points out that the Fourth Circuit affirmed, *per curiam*, Judge Kaufman's application of the *pro rata* rule to measure the contribution rights of co-defendants. This decision remains unchanged, despite *Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101 (4th Cir.1989), where the Fourth Circuit held that there was no implied right of contribution under 12(2) of the Securities Act of 1933. Therefore, it argues that, where there is a right of contribution, *Wassel* stands. However, in *MacKethan v. Burrus, Cootes and Burrus*, 545

F.2d 1388, 1390–91 (4th Cir.1976), *cert. denied*, 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977), the Fourth Circuit utilized the *pro tanto* offset method in a federal securities action.

3. Where federal securities cases involve pendent state claims which are governed by applicable state law regarding contribution among joint tortfeasors, and federal court chooses a method of setoff inconsistent with state law, the setoffs would have to be figured differently with respect to each set of claims.

**894**

*pel, Dixon,* 631 F.Supp. 1029, 1036 (S.D.N.Y.1986) (adopting New York statute in order to establish a uniform rule of contribution governing federal and state claims in a single case). *See also Singer, supra,* 878 F.2d at 599–600 (uniform national rule of settlement credit appropriate since setoff affects substantive rights under the federal securities laws, and circuits generally have not adopted state law as the rule of decision to govern substantive rights (citations omitted)). *But see Atlantic Financial, supra,* 718 F.Supp. 1012 (adopting pro tanto rule "consistent" with Massachusetts law).

Ernst & Young also contends that the *pro rata* method lessens the risk of ultimate inequity which theoretically is inherent in any case involving partial settlement. However, as discussed above, under *pro tanto,* the Court conducts a fairness hearing for the specific purpose of preventing any inequities.

■ The *proportionate* method is the least preferable. The exact amount of any setoff cannot be determined under the *proportionate* rule, until the jury determines culpability, making an already difficult trial even more complex. Consequently, plaintiffs are less apt to settle because of the lack of certainty. *Atlantic Financial,* 718 F.Supp. at 1018. In addition, the *proportionate* rule makes it difficult to frame a notice to the Class which fairly presents the merits of the proposed settlement. *Id.* In addition, plaintiffs claim that defendants will be discouraged from settling under the *proportionate* method because they know that they will never be forced to pay more than their share of the damages, thereby decreasing the risks of a trial. *See Dalton v. Alston & Bird,* 741 F.Supp. 157, 160 (S.D.Ill.1990).

Moreover, the *proportionate* rule also fosters collusion among the non-settling defendants, encouraging them to "gang-up" on the settling defendant at trial to portray the settling defendant as the key perpetrator in the wrongdoing. *See MFS Municipal Trust v. American Medical International, Inc.,* 751 F.Supp. 279, 284 (D.Mass. 1990).

Accordingly, for the reasons set forth herein, the *pro tanto* method of setoff will be applied to the facts of this case.