Michael GERBER, Howard Mayer and Barry W. Feldman, Plaintiffs,

Fred Kayne, Oppenheimer & Co., a Delaware Corporation, as custodian for Fred Kayne Individual Retirement Accounts, Stephen Kayne, Don Wohl, Milton T. Okun, Rosemary Okun, Glenn Tobias, Merrill, Lynch, Pierce, Fenner & Smith, Inc., a Delaware Corporation, as Custodian for Milton T. Okun Individual Retirement Accounts, Ken Berg, Robert A. Bronstein, Bronstein Family Trust, Bruce Burnam, Marcia Burnam, Kathleen A. Cohen, William Corbett, Cutler Family Trust of 1989, Martin Goldfarb, Richard Gunther, Harpel Partners, L.P., Harpel Wheelock Partners, L.P., Harpel International, Ltd., Richard L. Milsner, Joel Rumm, Victor Scaravilli and Tri S Partners and Todd Ellis, Joseph Meyer, Leona Moga, Terry Schultz, Eddy Sherman, Kenneth Steiner, Audree Yorkes, on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

v.

MTC ELECTRONIC TECHNOLOGIES CO., LTD., Defendant–Counter–Defendant–Appellant,

BDO Dunwoody Ward Mallette, Defendant–Third–Party–Plaintiff–Appellee,

Alan Leung, Defendant–Cross–Claimant,

HSBC Bank Canada and Ron Driol, Third Party–Defendants–Cross–Claimants–Appellees,

Miko Leung, H.J. Meyers & Co., Inc. and Sit Wa Leung, Defendants–Cross–Defendants,

v.

Daiwa Securities America, Inc., Defendant–Cross–Claimant–Appellant,

Robert C. Farr; Peter Jensen; Thomas Lenagh; Edilberto V. Pozon; Goodwin Wang; David Wong, Defendants–Counter–Defendants–Appellants,

Levesque Securities, INC., Meridian Securities International Limited, Maurice Lee, Canaccord Capital Corp., First Canada Securities, Leib Orlanski, Freshman, Marantz, Orlanski, Cooper & Klein, Harley Gleckman and Wall Street Financial Corp., Defendants.

No. 02–7023(LEAD), 02–7026(CON), 02–7083(CON), 02–7084(CON), 02–7143(CON), 02–7147(CON), 02–7215(CON).

United States Court of Appeals, Second Circuit.

Argued: Feb. 3, 2003.

Decided: May 15, 2003.

Lawrence H. Nagler, Nagler & Associates, Los Angeles, CA (David F. Berry, of counsel),for plaintiffs-appellees.

Gary P. Naftalis, Kramer Levin Naftalis & Frankel LLP, New York, N.Y. (Alan R. Friedman, Stephen M. Sinaiko, Jennifer L. Rochon, J. Wells Dixon, of counsel, Bruce S. Kaplan, Friedman Kaplan Seiler & Adelman LLP, New York, NY, on the brief), for defendant-cross-claimant-appellant Daiwa Securities America, Inc.

Thomas I. Sheridan, III, Torys LLP, New York, NY, for defendant-counter-defendant-appellant MTC Electronic Technologies Co.

Gregory A. Markel, Cadwalader, Wickersham & Taft LLP, New York, N.Y. (Paul R. Bessette, Austin, TX, on the brief), for defendant-third-party-plaintiff-appellee BDO Dunwoody.

Before: JACOBS, POOLER and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge.

Defendant-cross-claimant-appellant Daiwa Securities America, Inc. ("Daiwa"), defendants-counter-defendants-appellants MTC Electronic Technologies Co., Ltd. ("MTC") and Robert C. Farr, Peter Jensen, Thomas Lenagh, Edilberto V. Pozon, Goodwin Wang, and David Wong (collectively "the individual defendants") appeal from a judgment of the United States District Court for the Eastern District of New York (John Gleeson, *District Judge*) approving partial settlements between plaintiffs-appellees and defendants-appellees BDO Dunwoody ("BDO"), and HSBC Bank Canada ("HSBC") and Ron Driol, an HSBC executive.

Appellants (collectively "the non-settling defendants") contend that the district court erred in approving the partial settle-

ments without ensuring that their settlement judgment credit would be at least the total amount paid by the settling defendants and by deferring determination of the exact amount of the credit until trial. They also take issue with the district court's approval of a settlement bar order extinguishing any claims against BDO relating to or arising from the allegations of this litigation. According to the non-settling defendants, any bar order should be narrowed to include only indemnity and contribution claims, and should also impose a reciprocal bar on claims by BDO. Alternatively, the non-settling defendants argue that at least with respect to the settlement of the claims of those plaintiffs added by amendment to the complaint after the effective date of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub.L. No. 104–67, 109 Stat. 737 (1995) (codified as amended in scattered sections of 15 U.S.C.), the bar order must be mutual.

We affirm the district court's orders in part. We hold that the court's deferral of the allocation of particular settlement amounts to various elements of damages for purposes of calculation of the non-settling defendants' judgment credit was not erroneous, and conclude that, in light of the concessions made by plaintiffs on appeal, the non-settling defendants will receive a credit that is at least the settlement amount for common damages. We also affirm, with a slight modification, the district court's bar order extinguishing the claims of the non-settling defendants for indemnity and contribution, and any other claims where the damage to the non-settling party is measured by its liability to the plaintiffs for claims relating to this action. We vacate and remand that part of the district court's order relating to the mutuality of the bar order because we find that the magistrate judge, whose recommended ruling the district court adopted,

did not fully consider the competing equities involved in the mutual and non-mutual rules. Finally, we agree with the district court that the PSLRA does not apply to any of the added plaintiffs in this action, which was commenced prior to that statute's effective date.

## BACKGROUND

### I. The Litigation

MTC was a company based in British Columbia that purportedly had binding joint ventures regarding the operation, manufacture and sale of telecommunications equipment in China. Plaintiffs are a group of investors who purchased shares of MTC common stock between 1992 and 1994. MTC allegedly raised over $70 million in a secondary offering in 1993, which was underwritten by defendant Daiwa. Defendant BDO Dunwoody ("BDO") was MTC's auditor during the time period at issue. Plaintiffs allege that MTC's purported telecommunications joint ventures were fraudulent and materially misrepresented. As a result, plaintiffs claim to have incurred trading losses in MTC stock of more than $15 million.

Nine of the named plaintiffs filed suit against MTC, its principals (Miko Leung and Sit Wa Leung), various MTC officers and directors (the individual defendants), Daiwa and BDO in the Central District of California on January 23, 1995, alleging securities fraud, RICO violations and state law claims of fraud, negligent misrepresentation, and breach of fiduciary duty ("the *Kayne* action"). Because plaintiffs' allegations were similar to those of two class actions then pending against MTC in the Eastern District of New York, the *Kayne* action was transferred to Judge Gleeson by the Judicial Panel on Multidistrict Litigation for coordinated pre-trial proceedings. Plaintiffs moved to amend their

complaint to add seventeen additional plaintiffs in April 1996, and two more in March 1997. The individual defendants and BDO filed third-party claims against HSBC and Ron Driol, an HSBC officer, alleging that they assisted in the misappropriation of MTC stock by the Leungs. Plaintiffs then sought leave to add HSBC and Driol as defendants. That motion was denied, and the plaintiffs filed a state court action in California asserting federal RICO and state common law fraud claims against HSBC and Driol. These claims were consolidated with a California state court action that had previously been filed by the seventeen plaintiffs who were added to the federal action in April 1996, and both state court actions were stayed pending the outcome of the proceedings before Judge Gleeson. The two original MTC class actions settled; this action remains pending in the Eastern District of New York before Judge Gleeson.

## II. The Settlements

In late 2000, plaintiffs reached an $8 million settlement with BDO purporting to allocate $4,907,975.50 to out-of-pocket damages and $3,092,024.50 to pre-judgment interest. Plaintiffs also reached a $4,075,000 settlement with HSBC and Driol, allocating $1,300,000 to out-of-pocket damages, $819,000 to prejudgment interest, and $1,956,000 to attorneys' fees (which are recoverable under RICO). In exchange, plaintiffs agreed to release BDO, HSBC and Driol for all claims they might have against the settling defendants in any forum, related in any way to the MTC litigation.

These settlements were submitted to the district court for approval, and were referred to Magistrate Judge Chrein for a recommended ruling. The settling parties sought an order finding that the settlements were good faith settlements under California and federal law, barring claims by the non-settling defendants while preserving the claims of the settling defendants, dismissing the claims pending in the Eastern District of New York, and approving the allocation of damages while leaving the determination of any judgment credit for the non-settling defendants until after trial. Although plaintiffs had made settlement contingent on the district court's adoption of their specific allocations, they subsequently agreed to finalize the settlements if the propriety of the allocations within the settlement figure was left to the trial judge.

## III. Rulings Below

In a recommended ruling, Magistrate Judge Chrein held that a "capped proportionate share" rule would determine the amount of the judgment credit to which the non-settling defendants are entitled on the state and federal claims. Under such a rule, the credit is the *greater* of the settlement amount for common damages or the settling defendants' share of liability as proven at trial. The magistrate judge observed that this "rule ensures that no matter how the settlement funds are distributed as between damages and other elements, the non-settling defendants will never be required to pay more than their proportionate share of an award as determined by the trier of fact."

The magistrate judge also rejected the non-settling defendants' argument that the PSLRA applied to the claims of the nineteen plaintiffs who joined the suit by amendment after the statute's effective date. The magistrate judge found that the PSLRA did not apply to those plaintiffs because the *Kayne* action was "commenced" on the date they filed the original complaint, not the date the plaintiffs were added.

Finally, the magistrate judge held that a bar order extinguishing "any claims arising out of or reasonably flowing from the claims and allegations in the Kayne Action" was proper because the non-settling defendants would be adequately protected by the judgment credit. With respect to whether the bar order should also bar the settling defendants from asserting contribution or indemnity claims against the non-settling defendants, the magistrate judge noted that a district court in this Circuit had previously held that settling defendants should be allowed to seek contribution from non-settling defendants to achieve equitable apportionment of damages among defendants. *See In re Del–Val Fin. Corp. Sec. Litig.*, 868 F.Supp. 547, 563–64 (S.D.N.Y.1994). While expressing concern that "[a] rule which allows settling defendants, who are buying 'peace of mind' and avoiding the costs and risks of litigation, to seek contribution from [the non-settling] defendants who bore the risk [of litigation] ... seems unfair," the magistrate judge stated that he "fe[lt] obliged to follow the only precedent in this Circuit especially given that the [non-settling defendants] were on the receiving end of this benefit in the [prior] class settlement." The magistrate judge then approved those portions of the bar orders preserving the settling defendants' claims against the non-settling defendants.

The parties filed objections and requests for clarification, which were considered by the district court. Judge Gleeson adopted the magistrate judge's recommendations in their entirety with one modification, holding that "if a judgment is obtained against a nonsettling defendant, the judgment reduction shall not necessarily be calculated by using the full amounts of the settlements. Rather, allocations of amounts within those gross figures (to damages,

prejudgment interest and attorneys' fees) shall be subject to the discretion of the trial court."

MTC, the individual defendants, and Daiwa have appealed. Plaintiffs have responded to the appeal on the question of the calculation of the judgment credit, the district court's deferral of that calculation, and the applicability of the PSLRA. BDO has responded on the issue of the scope and non-mutuality of the bar order and the applicability of the PSLRA.[1]

## DISCUSSION

### I. Standard of Review

 "A court can endorse a settlement only if 'the compromise is fair, reasonable and adequate.'" *In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1026 (2d Cir.1992) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982)). This Court has also observed that "where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval." *Id.* Although the district court normally has discretion to approve a settlement, we may review the district court's decision *de novo* where an appellant's challenge to the authority of the district court to approve the settlement raises novel issues of law. *Id.*

### II. The Judgment Credit

 We begin by noting the first of several issues that are not in dispute in this appeal. No party challenges the magistrate judge's determination that the non-settling defendants' judgment credit will be calculated using a "capped proportionate share" formula. Under this rule, the credit given for the settlements will be the

---

1. The individual defendants and Daiwa have settled with HSBC and Driol.

greater of the settlement amount for common damages (a *"pro tanto"* rule) or the "proportionate share" of the settling defendants' fault as proven at trial. Although we do not hold that such a formula is required, we agree with the magistrate judge's conclusion that the cap, which ensures that a judgment credit is at *least* the amount of the settlement for common damages, complies with this Circuit's "one satisfaction" rule, which prohibits a plaintiff from recovering more than "one satisfaction for each injury." *Singer v. Olympia Brewing Co.,* 878 F.2d 596, 600 (2d Cir.1989); *see also Masters,* 957 F.2d at 1030 ("[W]here a settlement and a judgment compensate a plaintiff for the same injury, a nonsettling defendant is entitled to a judgment reduction at least in the amount of a prior settlement.").[2] By awarding a credit that is at least the settling defendants' proven share of liability, the non-settling defendants' rights are protected even without a determination of the

fairness of the settlement. *See id.* at 1029 ("Because the credit determination [under a proportionate fault method] is made after a determination of liability, the proportionate method is always consistent with fault.").

Despite the parties' agreement on the method of calculation of the credit, the non-settling defendants argue that the district court's orders create a possibility that they will receive less than the full amount of the settlement as a judgment credit, allegedly in violation of the one satisfaction rule. They also contend that they are entitled to know the amount of their credit, not merely the method of calculation, before trial. For the reasons that follow, we disagree.

The settling parties here attempted to allocate the settlements to three elements of "damages" purportedly suffered by the plaintiffs: out-of-pocket damages, prejudgment interest, and attorneys' fees.[3] On

**2.** In *Singer,* the plaintiff had sued two parties for related securities fraud and RICO claims in separate lawsuits in New York and Illinois. *Singer,* 878 F.2d at 598–99. The plaintiff prevailed against one party at trial on the securities claims, for a total damages award of approximately $3,000,000 including prejudgment interest; the RICO claim was dismissed before trial. *Id.* The plaintiff then settled with the other defendant for $1,250,000. *Id.* at 597. The district court credited the full amount of the settlement toward the judgment, and the plaintiff appealed, arguing that the settlement of the second action included settlement of the RICO claim, which might have exposed the defendant to treble damages. As a result, the plaintiff sought to offset the settlement against a hypothetical trebled damages award (using the actual damages awarded at trial), which would have resulted in the first defendant receiving no benefit from the set-off. *Id.* at 600. We rejected this argument, "declin[ing] to journey with [the plaintiff] down this road of speculation" because there had been no adjudication that anyone was liable to the plaintiff on the RICO claim:

Although ... the settling defendant may well have considered its possible exposure to treble damages in deciding to settle, it would be entirely speculative for us, absent a finding of liability on the RICO claim, to treble in the settled Illinois case the actual damages awarded in the tried New York case.

*Id.* at 601. Here, in contrast to *Singer,* plaintiffs are headed to trial against the non-settling defendants on the RICO and state law claims under which they seek attorneys' fees and prejudgment interest. Thus, whether there will be an award entitling plaintiffs to recover these elements of damages may not be speculative. For our purposes, *Singer* suggests that where a plaintiff loses on a claim at trial, the plaintiff cannot allocate a portion of the settlement to damages for that losing claim in order to reduce a non-settling defendant's judgment credit; instead, the judgment credit is to be the full amount of the settlement for common damages.

**3.** The references to "damages" as allocated in the settlements and the district court's orders are somewhat unclear. The entire settlement amount is a payment of "damages" by the

appeal, plaintiffs have conceded that in any of three possible scenarios, the judgment credit will be at least the full amount of the settlement for common damages. First, if plaintiffs prevail at trial on claims that entitle them to prejudgment interest (the state law claims, and, at the discretion of the trial court, the federal securities claims) or attorneys' fees (the RICO claims), they do not disagree that the non-settling defendants may use any amounts the district court allocates to these elements of damages to set off their liability on those elements respectively. Further, plaintiffs have also agreed that if the settlement money allocated to prejudgment interest exceeds the jury's award on this element, "any remaining portions can be used to offset out-of-pocket damages." Brief for Plaintiffs–Appellees at 12. (The plaintiffs presumably would concede the same with respect to the portion of the settlement allocated to attorneys' fees.) Finally, plaintiffs have acknowledged that they cannot allocate *any* of the settlement to attorneys' fees or prejudgment interest if plaintiffs do not prevail on claims entitling them to these types of damages:

> If ... it is determined [that] Plaintiffs are *not* entitled to prejudgment interest, *all portions of the settlements allocated to prejudgment interest could be used as an offset against any award of out-of-pocket damages.* The same holds true for the attorneys' fees portion of Plaintiffs' settlement with the Bank if Plaintiffs do not prevail at trial on their RICO claims against the Non-settling Defendants.

*Id.* (emphasis added). As plaintiffs have conceded that the judgment credit will be at least the full amount of the settlement, regardless of how these various elements of damages are allocated at trial, the non-settling defendants' fears that they will receive less than their full settlement credit or that the one satisfaction rule will be violated are unfounded.[4]

Despite these concessions, the non-settling defendants express concern that the district court held that "if a judgment is obtained against a nonsettling defendant, the judgment reduction shall not necessarily be calculated by using the full amounts of the settlements." The district court's order is accurate, however, insofar as only the portion of the settlement attributable to *common* damages will be credited. *See Masters,* 957 F.2d at 1031 ("Absent a showing that damages are not common, a nonsettling defendant whose rights against settling defendants are to be barred is entitled to judgment reduction at least in the amount paid by all settling parties."); *Singer,* 878 F.2d at 600 ("[W]hen a plaintiff receives a settlement from one defendant, a nonsettling defendant is entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant as long as both the settlement and judgment represent common damages.").

■ We also conclude that the non-settling defendants are not entitled to any greater degree of certainty about the amount of their judgment credit than they already have. Consistent with *In re Jiffy Lube Securities Litigation,* 927 F.2d 155, 157 (4th Cir.1991), relied upon by the non-

---

settling defendants to the plaintiffs. Within the broad category of damages, the allocation was to *out-of-pocket* damages, attorneys' fees and prejudgment interest.

**4.** Inasmuch as no party has articulated any reason that the credit should be allocated in

any particular way among the various elements of damages, we leave this issue, as well as the fairness of the allocations that the settling parties originally agreed upon, for the district court to consider after trial if necessary.

settling defendants, the district court's orders informed the parties well before trial of the method that will be utilized to calculate the set-off. The non-settling defendants know that they will get a credit amounting to the greater of (1) the settlement attributed to common damages, or (2) the settling defendants' proportionate share of the total damages. They therefore know that the settling defendants' wrongdoing is relevant, and can develop their trial strategy accordingly. We find no error in the district court's decision to leave the determination of the actual amount of the judgment credit for calculation at trial because the non-settling defendants will get at least the full settlement amount as a credit, unless the settlement damages are not common, an issue which is obviously contingent on the outcome of the trial.[5]

Accordingly, we construe the bar orders approved by the district court, consistent with plaintiffs' concessions on appeal and with *Singer,* as indicating that the non-settling defendants' judgment credit will be the greater of the settling defendants' proportionate share of liability or the amount of the settlements attributable to common damages, regardless of how the settlement amounts are ultimately allocated or re-allocated among out-of-pocket damages, prejudgment interest and attorneys' fees. So construed, the orders are affirmed as they relate to the calculation of the judgment credit.

## III. Scope of the Bar Order

■ With respect to the scope of the bar order entered by the district court, the parties' disagreement is again quite limited. The non-settling defendants do not dispute that the district court properly barred their contribution and indemnification claims. *See Masters,* 957 F.2d at 1031–32 (approving settlement bars of claims for indemnity and contribution if the non-settling defendant received a judgment credit of at least "the amount paid by settling defendants toward damages for which the nonsettling defendant would be jointly and severally liable"). They also clarified at oral argument that a "disguised" contribution or indemnity claim, such as a negligence claim where the injury to the non-settling defendants was their liability to the plaintiffs, could be barred. Instead, the non-settling defendants argue that the district court's bar order is too broad in that it extinguished "independent" claims, including claims arising from comfort letters issued by BDO to Daiwa in connection with underwriting of the 1993 secondary offering. The settling defendants, in turn, claim that they seek to bar only those claims where damages are calculated based on the non-settling defendants' liability to the plaintiffs. In a potentially contradictory position, however,

---

5. We note two issues relating to the commonality of damages that may be relevant to the trial court's calculation of the judgment credit. Plaintiffs have argued that if the non-settling defendants prevail at trial on their theory that they are only responsible for a particular set of injuries that are distinct from the damages caused by the settling defendants, and therefore are not held jointly and severally liable for the harm caused by the settling defendants, there would be no basis for granting a judgment credit in the full settlement amount because the settlement would not represent "common" damages. In addition, plaintiffs maintain that if only some of them were to prevail at trial, the judgment credit should be the greater of (1) the amount that the prevailing plaintiffs received of the settlement, or (2) the settling defendants' proven share of liability, again because the one satisfaction rule bars recovery for a particular plaintiff only to the extent that the plaintiff has already received compensation for his proven damages. We take no position on these issues at this time.

BDO also maintains that it is entitled to a broader bar of any claims related to the transaction giving rise to its involvement in this litigation, namely, the certification of MTC's financial statements.[6]

In *Masters*, we addressed the extinguishment of indemnity and contribution claims under a *pro tanto* recovery rule, and required a hearing on the fairness of the settlement to "protect the due process rights of third parties" in recognition of the possibility of collusion between the settling parties. 957 F.2d at 1031. Under the capped proportionate share rule adopted by the courts below, however, no such fairness hearing is necessary because the non-settling defendants' credit will be the *greater* of the proportionate fault or the settlement amount. By ensuring that, at the end of the day, the non-settling defendants are not held responsible for any damages for which the settling defendants are proven liable, the judgment credit adequately compensates the non-settling defendants for their indemnity and contribution claims, as well as for any other claims where the harm to the non-settling defendants is based on their liability to the plaintiffs. *See id.* at 1029–31.

Daiwa argues that the bar order impermissibly extinguishes "independent claims" that do not relate to any duty owed by BDO to plaintiffs, but rather involve a relationship between BDO and Daiwa based on the issuance of the comfort letters by BDO to Daiwa. If, however, Daiwa proves at trial that it acted as it did in reasonable reliance on BDO's comfort letters, the jury's apportionment of liability to BDO, and the judgment credit that results from that apportionment, will adequately protect Daiwa for any damages it owes to plaintiffs. To the extent that Daiwa and the other non-settling defendants were injured by their reliance on the comfort letters *only* inasmuch as they owe damages to plaintiffs as a result of that reliance, those claims were properly extinguished.

This resolution of the scope of the bar order corresponds with BDO's position that those claims where damages are calculated based on the non-settling defendants' liability to the plaintiffs should be barred. More problematic is BDO's alternative position that it is entitled to peace of mind on all claims arising out of the duties it may have breached with respect to the certification of the MTC financial statements, without regard for whether Daiwa might have a claim for damages that goes beyond its liability to the plaintiffs. It may well be, as BDO argues, that the non-settling defendants are only damaged to the extent they are liable to the plaintiffs in the underlying litigation. If, however, Daiwa were to prove that it sustained independent reputational damages or losses relating to the cost of defense arising out of a breached contractual or fiduciary relationship with BDO, it has not been compensated for those losses by the judgment credit, and any such claims should not be extinguished. *See TBG, Inc. v. Bendis*, 36 F.3d 916, 928 (10th Cir.1994) ("Courts that have allowed bar orders have only barred claims in which the damages are 'measured by' the defendant's liability to the plaintiff. Besides contribution and indemnity claims, these include any claims in which the injury is the nonsettling defendant's liability to the plaintiff. No court has authorized barring claims with

---

6. The individual defendants and Daiwa reached a settlement with HSBC and Driol, but MTC—which apparently has not settled with these parties—has joined in the arguments made by the individual defendants and Daiwa. We therefore discuss both the BDO and HSBC/Driol settlements, although we note that several arguments relate solely to the relationship between Daiwa and BDO.

independent damages." (citations omitted)); *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 495–96 (11th Cir.1992) (holding that the district court properly barred fraud and negligence claims against the settling defendants because those claims were simply another theory for recovering the damages the non-settling defendant had to pay to the plaintiff). The issue, in other words, is less one of independent "claims" than independent "damages."

We express no view on the likely merit of any claims for independent damages that the non-settling defendants may assert. We also recognize that the orders' reference to claims "arising out of or reasonably flowing from the claims or allegations in the *Kayne* action" may have been intended to encompass only claims where damages are based on liability owed by the non-settling defendants to the *Kayne* plaintiffs. In light of the position taken by BDO in this appeal, and in the absence of any finding from the courts below that no such claims exist, however, a modification to the bar orders is necessary to ensure that the only claims that are extinguished are claims where the injury is the non-settling defendants' liability to the plaintiffs.[7] Accordingly, the BDO settlement order approved by the district court is modified as follows:

> Each of the Non–Settling Defendants is hereby permanently BARRED, ENJOINED and RESTRAINED from commencing, prosecuting, or asserting any claim *for indemnity or contribution* against BDO *(or any other claim against BDO where the injury to the Non–Settling Defendant is the Non–Set-*

*tling Defendant's liability to the plaintiffs),* arising out of or reasonably flowing from the claims or allegations in the *Kayne* action, whether arising under state, federal or foreign law as claims, cross-claims, counterclaims, or third-party claims, in the *Kayne* action, in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States, Canada or elsewhere (collectively, the "Barred Claims"). These Barred Claims include, but are not limited to, any and all claims arising out of or reasonably flowing from "comfort letters" issued to Non–Settling Defendant Daiwa by BDO in connection with MTC, *to the extent that the injury to the Non–Settling Defendant under any such claim is its liability to the Kayne plaintiffs.*[8]

## IV. Non–Mutuality of the Bar Order

■ The non-settling defendants also object to the fact that the bar orders are "non-mutual," in that they bar the non-settling defendants from bringing contribution and indemnity claims against settling defendants without imposing a reciprocal bar on the settling defendants, which remain free to seek indemnity or contribution from the non-settling parties. According to the non-settling defendants, if the settling defendants "overpaid for the privilege [of avoiding the risks and expenses of further litigation in this case, they] should not be able to recover from Non–Settling Defendants who undertook those risks and expenses by choosing to

---

7. We have the authority to "affirm, modify, vacate, set aside or reverse any ... order of a court lawfully brought before [us] for review ...." 28 U.S.C. § 2106; *see, e.g., Aguinda v. Texaco, Inc.,* 303 F.3d 470, 480 (2d Cir.2002) (affirming the judgment of a district court with a modification).

8. To the extent necessary to protect the rights of any parties to this appeal, the district court is instructed to make a similar modification to the HSBC/Driol settlement bar order.

defend rather than accede to plaintiffs' demands."

In approving the entry of the non-mutual bar orders here, the magistrate judge cited *In re Del–Val Fin. Corp. Sec. Litig.*, 868 F.Supp. 547, 563–64 (S.D.N.Y.1994), in noting that "[o]ne court in this Circuit has considered the issue and determined that settling defendants should be allowed to seek contribution from non-settling defendants, reasoning that reduction by the [capped proportionate share] rule adheres to the one-satisfaction rule while permitting settling defendants to seek contribution fosters equitable apportionment of damages among defendants." The magistrate judge then expressed concern that such a rule "seem[ed] unfair" because it allowed the "settling defendants, who are buying 'peace of mind' and avoiding the costs and risks of litigation, to seek contribution from other defendants who bore the risk in the event they settled for too much." The magistrate judge, however, then stated that he "fe[lt] obliged to follow the only precedent in this Circuit especially given that the [non-settling defendants] were on the receiving end of this benefit in the class settlement," and recommended approval of a non-mutual bar.

The magistrate judge's expressed view that he was "obliged" to follow a non-binding district court decision, notwithstanding his concern that such a rule "seem[ed] unfair," convinces us that a remand for further consideration of the issue is warranted. Before approving a non-mutual bar order, the magistrate judge should have balanced the competing equities.

Ordinarily, in settling a case, the defendant bears the risk of overpayment and the plaintiff bears the risk of accepting a damages award lower than what would have been proved at trial. Each side may benefit from the possibility that the other side has paid too much (or accepted too little), and is sure to benefit from the assurance of a fixed payment. The risk is evenly distributed to both settling parties. The one satisfaction rule, however, complicates this balancing where there are multiple defendants but only a partial settlement: if the plaintiff settles with one defendant and goes to trial against another, it loses any benefit from the possibility that the settling defendant overpaid, because the judgment credit ensures that the plaintiff will not recover more than its total *proven* damages. As a result of the one satisfaction rule, if the settling defendant overestimates its proportion of plaintiff's damages, the non-settling defendant pays the plaintiff less than that non-settling defendant's proven liability. The question, then, is whether non-settling defendant should be entitled to the benefit of the settling parties' miscalculation. Although neither of the two possible rules is entirely unproblematic, a mutual rule may avoid creating incentives for collusion between the settling parties, while not putting the settling defendant at any unfair disadvantage.

Under BDO's suggested non-mutual method, the settling defendant knows that it will never pay more than its proportionate fault, because it can seek contribution from the non-settling defendant in the event that its settlement payment is for more than its proportionate fault. The settling defendants thus obtain the benefit of a cap on exposure without any risk that they will have overpaid. The non-settling defendants will have to pay exactly their share of the harm as proven at trial, regardless of the settlement amount, because the non-settling defendants will have to pay back any judgment credit that exceeds their proven liability to the settling defendants on a claim for contribution. The settling plaintiffs bear the risk that they

will settle for too little, because even where the defendants are joint tortfeasors, the capped proportionate share rule requires the non-settling defendants to pay only up to their proportionate fault, thus exposing plaintiffs to a potential shortfall in recovery. Both the settling defendant and the plaintiff would have an incentive to establish that the settling defendant is less at fault, creating a possibility of collusion between the settling parties because the settling defendant would be able to increase the amount of contribution it was entitled to by showing that the non-settling defendant was more at fault, and the plaintiff would want to avoid a situation in which the proportionate share of the settling defendant was found to be greater than the settlement amount.

In contrast, under the non-settling defendants' proposed mutual rule, a settling defendant retains the risk that it will settle for more than its proportionate share of the harm ultimately proved at trial; in exchange, its maximum exposure is limited to the amount for which it settles. The settling plaintiffs are in the same position as under BDO's proposed non-mutual rule. Under the mutual rule, however, the non-settling defendants obtain a potential windfall if the settling defendants settle for more than their proportionate share of the harm, because the non-settling defendants' judgment credit is the *greater* of the settlement amount or the settling defendants' proven proportionate share of liability under the one satisfaction rule. On the other hand, there is no analogous risk of collusion. The settling defendant remains no worse off than if the one satisfaction rule were not in place.

On remand, the district court should consider whether, under the circumstances of this case, which include the possibility that the non-settling defendants benefitted from a similar non-mutual order in the prior settlement of the class-action claims, a non-mutual or a mutual bar order is most fair to all the parties involved. We also note that the PSLRA has resolved this dilemma in favor of mutual bar orders. *See* 15 U.S.C. § 78u–4(f)(7). While, for the reasons discussed below, we conclude that the PSLRA does not control the outcome of this pre-PSLRA case, the congressional determination that a mutual bar order was the better approach may have some bearing on the district court's resolution of this issue. Finally, we also recognize that at oral argument, counsel for BDO repeatedly indicated that BDO desired a non-mutual bar in order to be allowed to pursue claims against MTC and its parent corporation, Grande Holdings, and *not* Daiwa. This too may be relevant to the district court's consideration as to the scope of any non-mutual bar order on remand.

Accordingly, we vacate and remand that portion of the district court's order approving a non-mutual bar order in the BDO settlement for further consideration and balancing of the competing fairness issues.

## V. Applicability of the PSLRA

■ Finally, the non-settling defendants argue that the bar orders must be mutual for the claims of the nineteen plaintiffs who were added by amendment to the complaint after the effective date of the PSLRA. The district court properly rejected this argument.

Section 108 of the PSLRA provides that the PSLRA's provisions relating to settlement "shall not affect or apply to any private action [brought under the Securities and Exchange Act of 1934] commenced before and pending" on December 22, 1995. 109 Stat. 737, 758 (1995). This statutory language refers to "actions," not

to "claims." [9] We agree with the district court's conclusion that the "action" here was commenced when the complaint was filed on January 23, 1995. *See* Fed. R.Civ.P. 3 ("A civil action is commenced by filing a complaint with the court."). Amending the complaint, even to add additional plaintiffs, did not create a new action. *See McKowan Lowe & Co. Ltd. v. Jasmine, Ltd.,* 976 F.Supp. 293, 297 (D.N.J.1997). In the absence of any indication to the contrary, we doubt that Congress intended that courts would apply different sets of substantive and procedural rules to groups of plaintiffs asserting identical claims in a single action, depending on when those plaintiffs were added to the complaint. The district court's ruling is therefore affirmed on this issue.

## CONCLUSION

In summary, we affirm the bar orders with respect to the settlement judgment credit as construed in light of plaintiffs' concessions on appeal, deny the non-settling defendants' request for greater clarification as to the amount of their judgment credit, modify the language of the bar orders to extinguish only those claims for which the harm to the non-settling defendants is their liability to the plaintiffs, and vacate and remand the bar orders only on the issue of the non-mutuality of the orders.

The parties are to bear their own costs.

---

**9.** The non-settling defendants rely on *Adler v. Berg Harmon Associates,* 790 F.Supp. 1235 (S.D.N.Y.1992), which held that a statute permitting reinstatement of civil actions commenced prior to June 20, 1991 did not permit the reinstatement of the claims of a group of plaintiffs who were added by amendment to the original timely complaint *after* June 20, 1991. Although *Adler* observed that "[t]he plain language of the statute permits reinstatement only of claims commenced prior to June 20, 1991," *id.* at 1238, we find that the distinction between "actions"—the phrase actually used in both statutes—and "claims" is significant, and therefore disagree with *Adler*'s reasoning.