**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: HERITAGE BOND LITIGATION,

---

RUSSEL BETKER; VIRGINIA BETKER;
BETKER PARTNERS ONE, LP; BETKER
PARTNERS THREE, LP; LORI
O'SHEA; MICHAEL O'SHEA,
        *Plaintiffs-Appellees,*

v.

U.S. TRUST CORP., N.A., et al.,
        *Defendant-Appellee,*

and

BRUCE R. TALLEY,
        *Defendant-Appellant,*

VALUATION COUNSELORS GROUP,
INC., doing business as CBIZ
Valuation Inc., formerly known as
CBIZ Valuation Counselors,
        *Defendant-Appellee,*

ROBERT A. KASIRER; DEBRA
KASIRER,
        *Defendants-Appellees.*

No. 05-55072

D.C. No.
CV-01-05752-DT

13951

In re: HERITAGE BOND LITIGATION,

RUSSEL BETKER; VIRGINIA BETKER;
BETKER PARTNERS ONE, LP; BETKER
PARTNERS THREE, LP; LORI
O'SHEA; MICHAEL O'SHEA,
                    *Plaintiffs-Appellees,*

                    v.

U.S. TRUST CORP., N.A., et al.,
                    *Defendant-Appellee,*

                    and

BRUCE R. TALLEY,
                    *Defendant-Appellant,*

ROBERT A. KASIRER; DEBRA
KASIRER; CBIZ VALUATION GROUP;
CENTURY BUSINESS SVC,
                    *Defendants-Appellees.*

No. 05-55371

D.C. No.
CV-01-05752-DT

OPINION

Appeal from the United States District Court
for the Central District of California
Dickran M. Tevrizian, District Judge, Presiding

Argued and Submitted
May 6, 2008—Pasadena, California

Filed October 1, 2008

Before: Raymond C. Fisher and Richard A. Paez,
Circuit Judges, and James L. Robart,* District Judge.

*The Honorable James L. Robart, United States District Judge for the
Western District of Washington, sitting by designation.

Opinion by Judge Paez

## COUNSEL

Robert Scott Dreher and Matthew R. Miller (argued), Dreher Law Firm, San Diego, California, for Bruce Talley, appellant.

Daniel M. Harkins, Feldhake, August & Roquemore, Irvine, California, for Russel Betker, Virginia Betker, Betker Partners One, LP, Betker Partners Three, LP, Lori O'Shea, and Michael O'Shea, appellees.

G. Cresswell Templeton, III, Hill, Farrer & Burrill LLP, Los Angeles, California, for U.S. Trust Corp., N.A., appellee.

Gary Kurtz, Law Offices of Gary Kurtz, Woodland Hills, California, for Robert A. Kasirer and Debra Kasirer, appellees.

Garland Kelley, Irell & Manella, LLP, Los Angeles, California, for CBIZ and Century Business Services, appellees.

---

**OPINION**

PAEZ, Circuit Judge:

This case arises from the settlement of a complex of securities fraud cases involving the sale of municipal bonds for renovation and construction of health care facilities. The litigation was commonly referred to as the *In re Heritage Bond Litigation*. The district court ultimately approved multiple settlement agreements between different plaintiffs and defendants pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), California Code of Civil Procedure section 877.6 ("section 877.6"), and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4. In approving the settlements, the district court issued five bar orders that barred non-settling defendants from bringing against settling defendants any future claims "arising out of or related to . . . any of the transactions or occurrences alleged." Appellant Bruce Talley ("Talley"), a non-settling defendant, objected to the scope of the bar orders on the ground that he sought to pursue independent state law claims against several of the settling defendants.

The district court, applying the "interrelatedness" test from *Wisconsin Investment Board v. Ruttenberg*, 300 F. Supp. 2d 1210 (N.D. Ala. 2004) (following *In re U.S. Oil & Gas Litigation*, 967 F.2d 489 (11th Cir. 1992)), determined that Talley's claims were related to and arose out of the litigation involving the Heritage Bonds and, in the five bar orders, specifically barred his claims. In this appeal, Talley challenges the scope of the bar orders and argues that under federal common law, the PSLRA, and section 877.6, the orders should have been limited to claims for contribution and indemnity or

disguised claims for such relief.[1] Talley concedes that any claims for indemnity, contribution, and comparative fault were appropriately barred by the orders at issue here. He contests the bar orders only to the extent they bar his allegedly independent state law claims. Appellees[2] argue that the district court has broad authority to issue bar orders and that this court should apply the "interrelatedness" test to determine that Talley's state law claims arise from the same core facts as those extinguished by the district court's approval of the settlement agreements.

We have jurisdiction under 28 U.S.C. § 1291, and we vacate the bar orders and remand for modification. In so doing, we adopt the approach of the Second Circuit in *Gerber v. MTC Electronics Technologies Co.*, 329 F.3d 297 (2d Cir. 2003), in limiting the scope of a bar order issued as part of a securities fraud class action settlement.[3] We hold that bar

---

[1]Talley also requests that we take judicial notice of certain joint stipulations made by the settling parties and approved by the district court in the underlying *In re Heritage Bond Litigation*. Because these documents arise from proceedings that have a direct relation to this appeal, we grant the request. *See* Fed. R. Evid. 201; *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo* ("*Borneo*"), 971 F.2d 244, 248 (9th Cir. 1992) ("[This court] may take notice of proceedings of other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

[2]Appellees include Russel Betker; Virginia Betker; Betker Partners One, LP; Betker Partners Three, LP; Lori O'Shea; Michael O'Shea; U.S. Trust Corp., N.A., et al.; Robert A. Kasirer; Debra Kasirer; CBIZ; Century Business Services; and Valuation Counselors Group, Inc. Although Valuation Counselors Group, Inc. is not listed on this court's docket, they were part of Talley's Notice of Appeal and filed a supplemental brief in this appeal.

[3]As discussed, *infra* at 13967, although the PSLRA had become effective by the time the Second Circuit issued its decision, it was not in effect at the time the parties brought the underlying action. Therefore, the *Gerber* court analyzed the challenged bar order under federal common law rather than the PSLRA. *Gerber*, 329 F.3d at 309-10. We agree with the Eleventh Circuit, however, that *Gerber* is relevant to the interpretation of the PSLRA's contribution bar, which essentially codified federal common law allowing for issuance of a bar order as part of a securities fraud class action settlement. *See AAL High Yield Bond Fund v. Deloitte & Touche, LLP*, 361 F.3d 1305, 1311 (11th Cir. 2004).

orders issued pursuant to the PSLRA or section 877.6 may only bar claims for contribution and indemnity or disguised claims for such relief. Independent claims—those where the injury is not the non-settling defendant's liability to the plaintiff—may not be barred under either federal law or section 877.6. *See Gerber*, 329 F.3d at 306 (federal common law); *Cal-Jones Props. v. Evans Pac. Corp.*, 264 Cal. Rptr. 737, 739 (Cal. Ct. App. 1989) (section 877.6). The bar orders issued by the district court here do not pass muster under the PSLRA or section 877.6, and because they are impermissibly broad, they must be vacated.

## I.   Background

The underlying litigation in this case involved investor plaintiffs' securities fraud claims against the individuals responsible for creating, operating, marketing and selling Heritage Bonds; certain defendants' cross-claims against each other for indemnity and contribution; and Talley's separate tort claims against certain co-defendants—his employers and the creators and operators of the Heritage Bonds.

In the mid-1990s, defendant Robert Kasirer joined with several other entities to develop a series of fraudulent municipal bond offerings (the Heritage Bonds), ostensibly to finance or renovate healthcare facilities in several states. *See In re Heritage Bond Litigation*, 289 F. Supp. 2d 1132, 1137 (C.D. Cal. 2003). The principals of the Heritage Bonds offerings included Talley's employer, Miller & Schroeder, Inc., which was the underwriter for the offerings. *See id.* In 1999, investors discovered that the Heritage Bonds principals had been stealing and commingling the bond investors' funds, that the Heritage Bonds principals had lied about their backgrounds and the nature of the healthcare facilities that were the subjects of the bond offerings, and that Miller & Schroeder's principals and lawyers had known of these facts. *See id.* at 1140.

The first lawsuit was filed in June 2001 in the United States District Court for the Central District of California, Case No. 01-CV-5752, captioned *Betker Partners One, et al. v. U.S. Trust Company, et al.* ("*Betker* lawsuit").[4] The Betkers were investors in the Heritage Bonds. Their claims included securities fraud and control person liability under the Securities Exchange Act of 1934 and violations of the Securities Act of 1933. They also alleged state law claims for breach of fiduciary duty, violations of the California Corporations Code, misrepresentation, breach of contract, and negligence.

In August 2002, the *Betker* lawsuit and other related class action lawsuits that had been filed around the country were consolidated by the Judicial Panel on Multi-District Litigation and transferred to the Central District of California under the title of *In re Heritage Bond Litigation*, Case No. 02-ML-1475. *See* 28 U.S.C. § 1407. Talley was a defendant only in the *Betker* lawsuit. He filed an answer and cross-claims against several co-defendants in the consolidated case. His cross-claims were for indemnity and contribution.

---

[4]Parties to the *Betker* lawsuit include Russel and Virginia Betker, as Trustees of the Betker Family Trust; Betker Partners One, LP; Betker Partners Three, LP; Lori O'Shea; Michael O'Shea (the Betker plaintiffs); U.S. Trust Corp., N.A.; U.S. Trust Company of Texas, N.A.; Bank of New York, Inc.; Heritage Geriatric Housing Development VII, Inc.; Heritage Geriatric Housing Development VIII, Inc.; Heritage Geriatric Housing Development IX, Inc.; Heritage Care of Chicago, Inc.; Heritage Care of Sarasota, Inc.; Heritage Housing Development, Inc.; Health Care Holdings, LLC; CareContinuum, LLC; Heritage Acceptance Corp.; Affiliated Metropolitan Contractors, Inc.; Valuation Counselors Group, Inc.; Robert Kasirer; Jerold Goldstein; Onofrio v. Bertolini; Debra Kasirer, individually and as Trustee of the Debra Kasirer Trust; Canon Realty Corp; Heritage Housing V, Inc.; BHMC Corp.; JDDJ Holdings, LP; James E. Iverson; Victor P. Dhooge; John M. Cleary; James F. Dlugosh; Edward J. Hentges; Kenneth R. Larsen; Jerome E. Tabolich; Steven W. Erickson; Paul R. Elholm; Joel T. Boehm; Sabo & Green; Coddington Appraisal Services; Capital Valuation Group; CBIZ (formerly Century Business Services); Healthcare Financial Solutions Group, Inc.; and Zelemkofske, Axelrod & Co., Ltd (the Betker defendants).

In December 2002, Talley filed a complaint in the California Superior Court, County of San Diego, No. GIC 802187, against many of the Heritage Bonds co-defendants and others, alleging claims for breach of fiduciary duty, negligence, interference with economic advantage, avoidance of fraudulent transfer, unfair or unlawful business practices, constructive fraud, and violation of California Labor Code section 2802, and requesting declaratory relief and both economic and reputational damages.[5] He also alleged the same claims for indemnity and contribution that he had alleged in his answer in the *Betker* lawsuit. In August 2003, upon motion by the defendants, the Superior Court stayed Talley's case pending the outcome of the claims against Talley in the *In re Heritage Bond Litigation*. In May 2004, this state court case was dismissed without prejudice while Talley pursued settlement discussions with the Betkers.

In October 2004, while settlement discussions with the Betkers were in progress, Talley filed a second state court lawsuit in the California Superior Court, County of San Diego, Case No. GIC 836807. This case concerned only Talley's affirmative claims for damages and did not include the contribution and indemnity claims that he had previously alleged in his answer and cross-claims in the *Betker* lawsuit. While the instant appeal was pending, Talley's second state court case moved forward through the California court system, and all of his claims were ultimately dismissed pursuant to the bar orders at issue here. *See Talley v. Miller & Schroeder*, No. D048438, 2007 WL 2660059 (not reported in Cal. Rptr. 3d) (Cal. Ct. App. Sept. 12, 2007). On appeal, "[d]ue to the broad language of all th[e] Bar orders," the California Court of

---

[5]In addition to the majority of the Betker defendants, including all of the Appellees other than the Betkers and the O'Sheas, the defendants named in Talley's complaint include: Miller & Schroeder Financial, Inc.; The Marshall Group, Inc.; Jim Arias; Kenneth Halloran; Jim Morrell; Tom Nelson; John Peterson; William Sexton; Larry A. Rubin; Virgil Lim; Leo Dierckman; Berman & Bertolini, Inc.; and Kasirer Family Holdings #4 LLC.

Appeal affirmed the majority of the trial court's dismissal orders.[6] *Id.* at *3. The decision allowed Talley to pursue certain of his claims against U.S. Trust Corporation and U.S. Trust Company, N.A. ("U.S. Trust") and Valuation Counselors Group, Inc. ("Valuation"), but, pursuant to the bar orders at issue here,[7] the superior court, on remand, dismissed the remaining claims with prejudice as to these two defendants; Talley did not appeal.[8]

By February 2005, Talley's settlement with the Betkers was finalized, and Talley was dismissed from the *In re Heritage Bond Litigation*. During this time, other defendants were also negotiating settlements with the *In re Heritage Bond Liti-*

---

[6]Appellees urge us to conclude that the state court decision moots this appeal. We disagree and address this argument, *infra.*

[7]The California Court of Appeal did not address whether the bar orders applied to U.S. Trust and Valuation because they were not part of the state court appellate record. The court concluded that, in the absence of the bar orders, Talley's state court claims against these defendants could proceed. *See Talley*, 2007 WL 2660059, at *24. In so concluding, the court held that these claims were not subject to claim preclusion or res judicata as a result of the dismissal of Talley's indemnity claims in the *Betker* lawsuit. *Id.*

[8]U.S. Trust and Valuation both request that we take judicial notice of five documents relating to the state court proceedings. Specifically, U.S. Trust requests that we take judicial notice of 1) the California Court of Appeal's decision in *Talley*, 2007 WL 2660059; 2) Notice of Ruling on Defendant the U.S. Trust Defendants' Demurrer to Plaintiff's Amended Complaint, California Superior Court for the County of San Diego, Case No. GIC 836807, filed and served on February 11, 2008; 3) Notice of Entry of Order of Dismissal with Prejudice as to the U.S. Trust Defendants, California Superior Court for the County of San Diego, Case No. GIC 836807, filed and served on February 20, 2008; 4) Order of the California Court of Appeal, Fourth Appellate District, Case No. D048438 (July 13, 2006); and 5) Order regarding Joint Stipulation to Dismiss the Betker Plaintiffs' Sixth Amended Complaint as to Bruce Talley Only and Dismissal of Bruce Talley's Cross-Complaint, in *Betker v. U.S. Trust Corporation, N.A., et al.*, U.S. District Court, Central District of California, Case No. CV 01-5752-DT (Dec. 1, 2004). Valuation's request is essentially identical. We grant both requests. *See Borneo*, 971 F.2d at 248.

*gation* plaintiffs. As part of the settlements that emerged from these negotiations, each agreement required a good faith settlement determination and bar order pursuant to section 877.6 and a bar order pursuant to the PSLRA. These determinations were an essential part of the settlement agreements because they allowed the court to make a finding that the settling party would pay its fair share of liability to the settling plaintiffs and, if so, to bar any further obligation by that settling defendant to contribute funds to the settling plaintiffs, either directly or indirectly by indemnifying another liable party. *See* Cal. Civ. Proc. Code § 877.6; PSLRA, 15 U.S.C. § 78u-4)(f)(7)(A); *Tech-Bilt, Inc. v. Woodward Clyde & Assocs.*, 698 P.2d 159 (Cal. 1985) (discussing section 877.6); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1231-32 (9th Cir. 1989) (holding that a bar order in a class action securities fraud case should bar future claims for contribution to ensure that liability is equitably distributed among settling and non-settling defendants).

In November 2004, defendants BHMC Corporation; Care-Continuum, LLC; Health Care Holdings, LLC; JDDJ Holdings, LP; Debra Kasirer; and Robert Kasirer ("Kasirer Defendants") filed a Motion for Approval of Settlement, Good Faith Determination and Bar Order in the *Betker* lawsuit before the district court. The motion included a request that the court enter a broad bar order extinguishing any future claims by non-settling defendants against the settling defendants related to or arising out of the *In re Heritage Bonds Litigation*. Talley filed an opposition to this motion, urging the court to bar only claims for contribution and indemnity. He argued that the bar orders would preclude his independent state court claims against the settling defendants. The district court rejected Talley's arguments and granted the motion and entered two orders—one granting preliminary approval and another granting final approval of the settlement—on December 9, 2004. The district court specifically identified Talley's state court case in the final order.

In doing so, the district court considered whether the proposed settlement satisfied the requirements of Rule 23(e), which requires that class action settlements be "fair, reasonable, and adequate," *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), and section 877.6, which requires that a settlement be made in good faith. *See Tech-Bilt*, 698 P.2d at 163. The court was guided by the following factors: the fact that the proposed settlement was the result of arms-length, informed, and court-assisted negotiations; the adequacy and reasonableness of the settlement amount; the absence of any evidence of collusion or fraud aimed to injure non-settling defendants; and the fairness of the settlement amount relative to both the proportionate liability of the settling defendants and the approximate total recovery of the plaintiffs. *See Staton v. Boeing Co.*, 327 F.3d 938, 959-60 (9th Cir. 2003) (Rule 23); *Dunk v. Ford*, 56 Cal. Rptr. 2d 483 (Cal. Ct. App. 1996) (section 877.6); *Tech-Bilt*, 698 P.2d at 166-67 (section 877.6).

Additionally, in response to Talley's challenge to the bar orders, the court evaluated the appropriate scope of the orders by reference to the "interrelatedness" test of *Wisconsin Investment Board v. Ruttenberg*, 300 F. Supp. 2d 1210 (N.D. Ala. 2004) (following *In re U.S. Oil & Gas Litigation*, 967 F.2d 489 (11th Cir. 1992)), which asks "whether the claims extinguished by the bar order arise out of the same facts as those in the underlying . . . securities litigation." *Ruttenberg*, 300 F. Supp. 2d at 1219. The district court found that "Talley's bald assertions that his claims rely on facts that are separate and distinct from the facts alleged in the present securities litigation are insufficient to support a finding that the proposed Bar Order is overly broad." Talley filed a Notice of Appeal on January 4, 2005, appealing the final approval order (Appeal No. 05-55072).

In January 2005, defendants Jerold Goldstein; Valuation Counselors Group, Inc.; CBIZ; Bank of New York; U.S. Trust Company; Leo Dierckman; and HFS Consultants in the Heri-

tage Bonds consolidated case each filed an identical Motion for Approval of Settlement, Good Faith Determinations, and Bar Orders. Talley filed an opposition to these motions, asserting the same arguments that he raised in his opposition to the similar motion noted above. The district court held a good faith hearing on the motions and entered two orders granting preliminary approval. The court again rejected Talley's arguments. The district court subsequently entered four final orders approving the settlements and bar orders on February 7, 2005.[9] The district court specifically identified Talley's state court case in the challenged bar orders, with the exception of the Goldstein bar order. Talley filed his second Notice of Appeal on March 2, 2005 appealing the four February 7, 2005 final approval orders (Appeal No. 05-55371).[10]

In sum, each of the five final settlement approval orders from which Talley appeals includes a broad bar order that specifically bars his state court claims that relate to the *In re Heritage Bond Litigation*.

## II.   Discussion

### A.   *Standard of Review*

A district court may approve a proposed settlement in a class action only if the compromise is fundamentally fair, adequate, and reasonable. Fed. R. Civ. P. 23(e); *Hanlon*, 150 F.3d at 1026. Ordinarily, we review a district court's decision to approve a settlement for abuse of discretion. *Hanlon*, 150 F.3d at 1026; *Resolution Trust Corp. v. Rice* (*In re Consol. Pinnacle W. Sec. Litig.*) ("*Resolution Trust*"), 51 F.3d 194, 197 (9th Cir. 1995). Talley, however, does not question the

---

[9]In May 2005, the district court granted Final Approval of Settlement, Good Faith Determination and Bar Order in the consolidated *In re Heritage Bond Litigation*, and on June 10, 2005, the court entered a Final Judgment and Order of Dismissal.

[10]We subsequently consolidated these two appeals for all purposes.

district court's authority to approve a settlement; he challenges the district court's interpretation of section 877.6 and the PSLRA to determine the permissible scope of a bar order issued pursuant to those statutes. "The district court's interpretation of a statute is a question of law" that we review de novo. *Beeman v. TDI Managed Care Servs.*, 449 F.3d 1035, 1038 (9th Cir. 2006); *see also In re McLinn*, 739 F.2d 1395, 1403 (9th Cir. 1984) (en banc) ("Whether the district court properly construed state law is a question we review de novo.").

B.  *Mootness*

As discussed above, Talley's state law claims were dismissed pursuant to the bar orders challenged here. *Talley*, 2007 WL 2660059. The California Court of Appeal affirmed the superior court's dismissal "[d]ue to the broad language of all th[e] Bar orders." *Id.* at *3. Appellees argue that because Talley's state law claims have been dismissed and the dismissal has been affirmed, this appeal is moot. We disagree.

**[1]** The Court of Appeal stated clearly that its reliance on the bar orders was premised on its view that it was bound by the broad language of the orders because the bar orders should be considered final while Talley's federal appeals were pending. *See Talley*, 2007 WL 2660059, at *3, 16 ("Plaintiff has appealed that [bar] order to the Ninth Circuit Court of Appeals, and appeal is pending, but for our purposes, under the rule of *Levy v. Cohen* (1977) 19 Cal.3d 165, 172 . . . it is currently deemed to be final. We must consider ourselves bound by the broad language of that Bar order."). The court followed the federal res judicata rule applied by the California Supreme Court in *Levy*, 19 Cal.3d at 172, that "a judgment or order, once rendered, is final for purposes of res judicata until reversed on appeal or modified or set aside in the court of rendition." *See Talley*, 2007 WL 2660059, at *16 (quoting *Levy*, 19 Cal. 3d at 172). By specifying that it affirmed the dismissal

of Talley's claims solely on this basis, the court implied that modification of the bar orders could revive Talley's claims.

We therefore agree with Talley that this appeal is not moot because we can still grant relief in his favor. We have previously held that "[a]n appeal is moot when, by virtue of an intervening event, a court of appeals cannot grant any effectual relief whatever in favor of the appellant." *United States v. Strong*, 489 F.3d 1055, 1059 (9th Cir. 2007). However, "[t]he party asserting mootness bears a heavy burden of establishing that there is no effective relief remaining for a court to provide." *Id.* (internal quotation marks and citations omitted).

**[2]** Although the federal courts are unable to grant Talley the ultimate relief he seeks—reinstatement of his state law claims—he has outlined several procedures he could follow in state court, such as filing a motion under California Code of Civil Procedure section 473 to vacate the judgment or filing a new action in state court, once the bar orders are modified. *See Romadka v. Hoge*, 283 Cal. Rptr. 878 (Cal. Ct. App. 1991) (reversing denial of plaintiff's motion to vacate where plaintiff's attorney requested dismissal with prejudice without authorization); *Hoover v. Galbraith*, 498 P.2d 981, 985 (Cal. 1972) ("[W]here it is not possible to bring an action to trial pending determination of an appeal in a related case, the time consumed on such appeal is impliedly excluded from the period of limitations."). We cannot order the superior court to reinstate Talley's claims, but by limiting the scope of the orders, we make it reasonably likely that he can succeed in obtaining reinstatement of his claims and, to the extent they are truly independent, have them heard on the merits. Because Talley can point to avenues for relief that will be open to him when the district court modifies the bar orders at issue here, Appellees have not carried their burden of demonstrating that there is no effective relief remaining for us to provide. Accordingly, we hold that this appeal is not moot and proceed to the merits of Talley's arguments.

### C.   *Scope of the Bar Orders*

Talley argues that, to the extent that they would bar him from bringing independent, non-indemnity or contribution claims in the superior court, the five bar orders challenged in this appeal exceed the scope allowed by the contribution bar provisions of the PSLRA, 15 U.S.C. § 78u-4(f)(7)(A)[11] and section 877.6.[12] We agree with Talley and the Second Circuit that a bar order issued in a partial settlement of a securities fraud class action case cannot bar independent claims. *See Gerber*, 329 F.3d 297.

[3] We have already acknowledged the authority of a district court under federal common law to issue bar orders bar-

---

[11]In its entirety, section 4(f)(7)(A) of the Private Securities Litigation Reform Act provides:

   (7) Settlement discharge

   (A)   In general

   A covered person who settles any private action at any time before final verdict or judgment shall be discharged from all claims for contribution brought by other persons. Upon entry of the settlement by the court, the court shall enter a bar order constituting the final discharge of all obligations to the plaintiff of the settling covered person arising out of the action. The order shall bar all future claims for contribution arising out of the action—

   (i)   by any person against the settling covered person; and

   (ii)   by the settling covered person against any person, other than a person whose liability has been extinguished by the settlement of the settling covered person.

[12]Adopted in 1980, California Code of Civil Procedure section 877.6(c) is a settlement bar statute. It provides:

   A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

ring future claims for contribution and indemnity as part of its approval of a proposed settlement in a class action securities fraud case, once it has found that the settlement satisfies the requirements of Rule 23. *See Resolution Trust*, 51 F.3d at 197; *Kaypro*, 884 F.2d at 1231; *In re First Alliance Mortgage Co.*, 471 F.3d 977, 1004 (9th Cir. 2006) ("In *Kaypro*, this court concluded under federal common law that a partial pretrial settlement in a securities case, pursuant to which non-settling defendants' rights to contribution are satisfied and further contribution barred, may be approved under Rule 23 if the liability of non-settling defendants is limited to their actual percentage of liability for the amount of total damages determined at trial."). We have not, however, previously addressed the question of whether the bar order provisions of section 877.6 and the PSLRA permit a district court, having found a good faith settlement in accordance with section 877.6 and Rule 23, to issue bar orders barring future claims other than those for contribution and indemnity. We address each statute in turn.

    i.   Private Securities Litigation Reform Act Section 4(f)(7)(A)

As we have previously acknowledged, "Congress passed the PSLRA [in 1995] because it was distressed with the proliferation and cost of allegedly meritless federal securities class actions. The PSLRA sought to curb abusive and frivolous securities suits by imposing new procedural and substantive requirements." *U.S. Mortgage, Inc. v. Saxton*, 494 F.3d 833, 841 (9th Cir. 2007); *see also In re Silicon Graphics Inc. Secs. Litig.*, 183 F.3d 970, 978 (9th Cir. 1999) (noting that Congress enacted the PSLRA in part to prevent abusive securities fraud class actions designed "to impose costs so burdensome that it [was] often economical for the victimized party to settle"). "Its provisions limit recoverable damages and attorney's fees, provide a 'safe harbor' for forward-looking statements, impose new restrictions on the selection of (and compensation awarded to) lead plaintiffs, mandate imposition

of sanctions for frivolous litigation, and authorize a stay of discovery pending resolution of any motion to dismiss." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81 (2006).

In its effort to reform litigation and settlement of securities fraud class actions, Congress also included the provision at issue here, which makes the entry of a bar order against future claims for contribution mandatory upon a court's approval of a settlement in such a case.[13] 15 U.S.C. § 78u-4(f)(7)(A). We are asked to determine whether the scope of a bar order under the PSLRA may also encompass independent claims, meaning claims other than those for contribution and indemnity, and we hold that it may not. In so holding, we adopt the federal common law approach taken by the Second Circuit in *Gerber*, 329 F.3d 297, and apply it to bar orders issued pursuant to the PSLRA.

**[4]** *Gerber* was not decided under the PSLRA. *Gerber*, 329 F.3d at 309-10. Prior to adoption of the PSLRA, federal courts determined the appropriate scope of bar orders issued in partial settlements of class action cases by reference to federal common law evolving from Rule 23(e)(2). *See Kaypro*, 884 F.2d at 1228-29 (holding that federal common law should govern the issue of contribution bars in securities class action settlements). Under the federal common law rule, once a court determined that a proposed settlement satisfied the requirements of Rule 23(e)(2), it could impose a bar order barring non-settling defendants' future claims for contribution and indemnity. *Kaypro*, 884 F.2d at 1231. The contribution bar provision of the PSLRA essentially codified this rule and

---

[13]We note that Congress gave no indication as to why the contribution bar was included or whether it was intended to encompass related state law claims. *See* S. Rep. No. 104-98, at p. 5-6, 104th Cong., 1st Sess.1995, *reprinted in* 1995 U.S.C.C.A.N. 679; H.R. Conf. Rep. No. 104-369, 104th Cong., 1st Sess.1995, *reprinted in part at* 1995 U.S.C.C.A.N. 730, 1995 WL 709276.

made the imposition of a bar against future claims for contribution mandatory in securities fraud class action settlements. 15 U.S.C. § 78u-4(f)(7)(A). Because the text of the PSLRA, which is geared to orders that bar "claims for contribution," *id.*, does not speak to whether a court may issue an order that bars independent claims, we look to the reasoning of cases determining the appropriate scope of similar bar orders under federal common law.

Appellees urge us to affirm the district court's application of the approach taken by the Eleventh Circuit in *In re U.S. Oil & Gas Litigation*, 967 F.2d 489 (11th Cir. 1992).[14] In determining the scope of the challenged bar orders, the district court relied upon the holding of *In re U.S. Oil & Gas Litigation*, as applied in *Ruttenberg*, 300 F. Supp. 2d at 1219, that

> [t]he propriety of the settlement bar order should turn upon the interrelatedness of the claims that it precludes, not upon the labels which parties attach to those claims. If the cross-claims that the district court seeks to extinguish through the entry of a bar order arise out of the same facts as those underlying the litigation, then the district court may exercise its discretion to bar such claims in reaching a fair and equitable settlement.

*In re U.S. Oil & Gas Litigation*, 967 F.2d at 496.

However, the Eleventh Circuit called this "interrelatedness" test and its opinion in *In re U.S. Oil & Gas Litigation* into question with its decision in *AAL High Yield Bond Fund v.*

---

[14]*In re U.S. Oil & Gas Litigation* was decided under federal common law, not the PSLRA, but courts have subsequently applied its "interrelatedness" test to PSLRA bar orders. *See Ruttenberg*, 300 F. Supp. 2d at 1216-17 (following *In re U.S. Oil & Gas Litigation* to hold that the PSLRA "does not divest the court of the power to fashion bar orders extinguishing claims other than those for contribution in the settled case").

*Deloitte & Touche, LLP*, 361 F.3d 1305 (11th Cir. 2004). In *AAL*, certain non-settling defendants in a securities fraud class action suit challenged the district court's bar orders as impermissibly broad under the PSLRA contribution bar when they precluded the non-settling defendants from bringing future claims against settling co-defendants. *Id.* The *AAL* court explicitly distanced itself from *In re U.S. Oil & Gas Litigation* by explaining that its holding in that case had narrow applicability because it had barred the cross-claims at issue there only because they were disguised contribution and indemnity claims, not truly independent claims. *AAL*, 361 F.3d at 1312 (noting that *In re U.S. Oil & Gas Litigation* "expressly declined to address the issue of 'truly independent claims' "). The court also declined to consider *Ruttenberg* as persuasive authority because of its reliance on *In re U.S. Oil & Gas Litigation*. *Id.* Because we find the reasoning of *AAL* persuasive, we likewise decline Appellees' invitation to adopt the federal common law rule articulated in *In re U.S. Oil & Gas Litigation* to determine the appropriate scope of a bar order issued pursuant to the PSLRA.[15]

[5] Instead, we hold that the correct standard for determining the appropriate scope of a bar order issued pursuant to the PSLRA is the federal common law test articulated by the Second Circuit in *Gerber*, 329 F.3d 297, that asks whether a non-

---

[15]Rather than resolving the question of whether the PSLRA contribution bar permits a district court to issue a bar order that precludes "truly independent claims," the *AAL* court vacated and remanded the challenged orders, in part because no allegedly independent claims had been brought against any settling party at that point. *AAL*, 361 F.3d at 1312. In addition to remanding for the district court to make findings of fact and articulate its rationale for imposing a broad bar order, the court instructed the district court to "address in the first instance whether the PSLRA mandates that the bar order it requires is exclusive or whether the statute suggests caution with respect to broader bar orders." *Id.*; *see also AAL High Yield Bond Fund v. Ruttenberg*, No. 00-cv-1404, 2005 WL 5926936, at *3 (N.D. Ala. June 2, 2005) (applying, on remand, the federal common law test articulated in *Gerber* to determine the appropriate scope of the contested bar orders under the PSLRA).

settling defendant's claims are independent. *Id*. at 306. We are persuaded that limiting bar orders issued pursuant to the PSLRA to claims for contribution and indemnity accords with the purpose and plain language of the statute and strikes an appropriate balance between the judicial policies of encouraging settlements, on the one hand, and protecting the legal rights of non-settling parties in class-action lawsuits, on the other. *See, e.g.*, *Kaypro Corp.*, 884 F.2d at 1229-31 (identifying policy of encouraging settlements in support of allowing contribution bars in partial settlements under federal common law); *New England Health Care Employees Pension Fund v. Woodruff*, 512 F.3d 1283, 1289 (10th Cir. 2008) (holding that non-settling defendants had standing to challenge "Bar Orders that eliminate certain independent claims" because they "palpably interfere with [the non-settling defendants'] preexisting rights and potential legal claims"). Similarly, interpreting the PSLRA to bar disguised claims for contribution and indemnity prevents non-settling defendants from engaging in an end run around a settlement agreement and an accompanying contribution and indemnity bar, while allowing them to pursue genuinely independent claims. *See, e.g.*, *In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1026 (2d Cir. 1992).

Like the instant case, *Gerber* addressed a challenge by certain non-settling defendants in a securities fraud class action to the district court's approval of a settlement bar order "extinguishing any claims against [certain co-defendants] relating to or arising from the allegations of [the] litigation." *Gerber*, 329 F.3d at 300. The parties did not contest the authority of the district court to bar claims for contribution and indemnity and conceded that "a 'disguised' contribution or indemnity claim, such as a negligence claim where the injury to the non-settling defendants was their liability to the plaintiffs, could be barred." *Id*. at 305. Instead, the appellants argued that the district court's bar order was impermissibly broad only insofar as it barred independent claims. *Id*. The *Gerber* court determined under federal common law that if a non-settling

defendant is able "to prove that it sustained independent reputational damages or losses relating to the cost of defense arising out of a breached contractual or fiduciary relationship with [the settling defendant], it has not been compensated for those losses by the judgment credit, and any such claims should not be extinguished [by the bar order]." *Id.* at 306.

In addressing which claims should not be precluded, the court explained that the only claims that could appropriately be barred by such an order, in addition to those for contribution and indemnity, were "disguised" claims for contribution or indemnity—those "in which the injury is the non-settling defendant's liability to the plaintiff," or "where damages are calculated based on the non-settling defendants' liability to the plaintiffs." *Id.* at 305-06. This distinction turns not on the presence of "independent 'claims' " but on whether the injured party can assert "independent 'damages.' " *Id.* at 306-07. Having determined that the bar order was impermissibly broad, the court remanded to the district court with instructions to determine whether any such claims existed and to modify the bar order to "ensure that the only claims that are extinguished are claims where the injury is the non-settling defendants' liability to the plaintiffs." *Id.* at 307.

The reasoning in *Gerber* is particularly apt in the context of this appeal. Like the appellants in *Gerber*, Talley does not question the district court's authority to issue bar orders that bar claims for contribution or indemnity, or disguised claims that seek such relief. He asserts precisely the same type of allegedly independent claims raised by the non-settling defendants in *Gerber*, arguing that his state law claims are not based on indemnity, contribution, or comparative fault with respect to Appellees' alleged liability.

**[6]** We conclude that the reasoning of *Gerber* is persuasive and that its holding regarding the permissible scope of bar orders issued in securities fraud class action settlements should be extended to apply to bar orders issued pursuant to

the PSLRA. We therefore hold that such bar orders may only bar claims for contribution and indemnity and claims where "the injury is the non-settling defendant's liability to the plaintiff." *Id.* at 306. When we apply this standard to the bar orders at issue in this appeal, it is clear that they are impermissibly broad insofar as they bar any genuinely independent claims. *See Masters Mates*, 957 F.2d at 1033 (finding similar bar order overly broad where it was impossible to predict state law claims potentially arising from litigation because non-settling defendant should not be forced to give up potential state law claims without compensation). The district court erred in relying upon the "interrelatedness" test to reject Talley's challenge to the scope of the bar orders; whether the allegedly independent claims arise from the same facts as the settled ones is not determinative of whether a particular claim is a disguised claim for contribution or indemnity. *See TBG, Inc. v. Bendis*, 36 F.3d 916, 928-29 (10th Cir. 1994). Given the broad language of the orders, "a modification to the bar orders is necessary to ensure that the only claims that are extinguished are claims where the injury is the non-settling defendants' liability to the plaintiffs." *Gerber*, 329 F.3d at 307. The modified orders should also reflect that the *Gerber* standard, rather than the "interrelatedness" test, defines the appropriate scope of the bar orders.

ii.     California Code of Civil Procedure Section 877.6

**[7]** By barring future claims for contribution and indemnity arising out of a partial settlement, section 877.6 seeks to encourage settlement and prevent settling and non-settling parties from bearing more than their proportionate share of liability. *See Tech-Bilt*, 698 P.2d 159 (explaining the rationale behind the section 877.6 good faith hearing). However, the bar orders adopted by the district court here went beyond both the purpose and the plain language of this statute by barring all claims "arising out of or related to . . . any of the transactions or occurrences alleged."

The California Supreme Court has held that, in making a good faith determination,

> the intent and policies underlying section 877.6 require that a number of factors be taken into account including a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants.

*Tech-Bilt*, 698 P.2d at 166-67. The trial court's determination that the settlement is in good faith operates as a bar against future claims for contribution and indemnity from the settling defendants. Cal. Civ. Proc. Code § 877.6(c); *see Far W. Fin. Corp. v. D & S Co.*, 760 P.2d 399, 407 (Cal. 1988).

In his challenge to the bar orders here, Talley does not claim that the settlements were entered into in bad faith in violation of section 877.6, and he concedes that the district court has the authority to bar claims for contribution or indemnity under this statute. Rather, he argues that the district court exceeded the scope of the statutory settlement bar by drafting the orders to bar claims other than those for contribution and indemnity. We agree.

[8] A finding of good faith under section 877.6, under the terms of the statute, bars only claims of "equitable comparative contribution, or partial or comparative indemnity based on comparative negligence or comparative fault." Cal. Civ. Proc. Code § 877.6(c). California courts apply a test similar to the one adopted in *Gerber* to determine the appropriate

scope of a bar order issued pursuant to section 877.6. A bar order under section 877.6 may not bar claims other than those for contribution and indemnity or artfully pled claims that amount to claims for contribution and indemnity. *Cal-Jones Props. v. Evans Pac. Corp.*, 264 Cal. Rptr. 737, 739 (Cal. Ct. App. 1989).

As the California Court of Appeal explained in *Cal-Jones*:

> If the claims between the joint tortfeasors are identical to those made by the plaintiffs or if the damages sought by the joint tortfeasors are those that the court would consider in determining the proportionate liability of the settling tortfeasor, then the claims are indemnity claims regardless of whether one or more of the claims are couched in affirmative language. A claim by a joint tortfeasor seeking neither indemnity nor contribution and which the trial court would not contemplate in determining the proportionate liability of a settling tortfeasor is not a claim for indemnity and hence survives a good faith settlement under section 877.6. If a claim is in fact one of indemnity, then it is barred pursuant to section 877.6.

*Id.*

**[9]** Because the bar orders here extinguish claims other than those for contribution and indemnity or artfully pled claims that amount to claims for contribution and indemnity, they do not pass muster under section 877.6 and must be modified in accordance with the standard set forth in *Cal-Jones*.

D.   *Proceedings on Remand*

**[10]** We vacate the challenged bar orders and remand for the district court to modify them in a manner consistent with this opinion. Once the bar orders have been modified, Talley

will be able to pursue reinstatement of his claims in the superior court through the available procedures outlined above.

**[11]** Talley argues that the superior court, rather than the district court, should determine whether his state law claims are truly independent.[16] If at the time the district court is asked to approve a settlement agreement, there is litigation pending that raises related but allegedly independent claims, the court should consider whether those claims are independent under the standard set forth today. In that event, the party seeking to pursue the claims would bear the burden of establishing that they meet the independence standard established here. When allegedly independent claims are brought *after* final approval of the settlement, however, the question of independence should be decided by the court where the claims are brought. Here, although Talley's claims were pending when the district court approved the settlements and issued the challenged bar orders, those claims have been dismissed and that dismissal has been affirmed on appeal. *See Talley*, 2007 WL 2660059. In this unique circumstance, once the bar orders have been modified and Talley obtains reinstatement of his claims, the state court can make the independence determination.

## III.   Conclusion

We vacate the five challenged bar orders and remand to the district court to modify the bar orders in a manner consistent

---

[16]In an effort to demonstrate to this court that his state law claims are independent, Talley included as Exhibit 4 of the Addendum to Appellant's Opening Brief a copy of his state court complaint. Appellees have moved to strike this document because it is not part of the district court record. Talley never filed an opposition to this motion, nor did he ever file a request that this court take judicial notice of the complaint. Because the document is not properly the subject of judicial notice and is not part of the district court record, we grant Appellees' motion and strike Exhibit 4 of the Addendum to Talley's Opening Brief. *See* Fed. R. App. Proc. 10(a); Fed. R. Evid. 201.

with this opinion.

**VACATED and REMANDED.**